Opinion of the Court to the House of Representatives.
In the Matter of the Appropriation Bill.

MAY 17, 1923.

(1)  *Constitutional Law.   Appropriations for Private Purposes.*

In case an appropriation bill containing distinct and separable appropriations
for public and private purposes, receives the approval of the governor and
becomes enrolled and promulgated as law and it should appear from the
journals of either house that in such house the act had received in its favor
the votes of a majority of a quorum of such house, but not of two-thirds
of the members elected thereto, the court would not declare the whole act
invalid but would strike out the independent appropriations for private
purposes and approve the rest of the act as constitutional.

(2)  *Constitutional Law.   Appropriations for Private Purposes.*

Similar power is in a house of the general assembly while such an act is pend-
ing before it and if the act receives the assent of a majority but not of two-
thirds of the members elected to such house, the house may treat the
appropriations for private purposes as dropped from the bill and those for
public purposes as having passed.

(3)  *Constitutional Law.   Construction.*

Constitutional provisions should be construed in accordance with their plain
intent.

(4)  *Constitutional Law.   Legislative Records.*

The court will not assume to contradict or impeach the journal of a house of
the general assembly, upon any charge of fraud or mistake, nor will it pass
upon a disputed question of fact as to what proceedings were taken in the
house, for the power to determine the correctness of the journal is solely in
the legislative body and no other body may intermeddle therein.

(5)  *Constitutional Law.   Legislative Journal.   Advisory Opinion.*

For the purpose of an advisory opinion to a house of the general assembly,
the court may interpret the records of a house of the assembly, in the light
of the facts appearing upon such records, and give to them the construction
warranted in law.

(6)  *Constitutional Law.   Appropriation Bill.*

The court advises that the action of the senate in "passing" certain items
for private purposes, in an appropriation bill prior to the passage of the
act as a whole, was tentative and in the nature of preparing the act for
final passage.

(7)  *Constitutional Law.   Appropriation Bill.*

Where a majority of one house of the assembly voted for an appropriation
act containing distinct and separable appropriations for public and private
purposes, after the act had received the approval of the other house, the

items for public purposes were passed, and the private appropriations were dropped, and the act in that form should not be presented to the governor for his approval but should in its amended form, be communicated to the other house for further action.

Supreme Court.

May 17, 1923.

*To the Honorable Speaker and House of Representatives:*

We have received from your honorable body a request, in conformity with Section 3, Article X of the Constitution, for our written opinion upon the following questions:

"*First:* Did two-thirds of the members elected to the Senate, by their separate and unanimous vote thereon of thirty-five in the affirmative and none in the negative, assent to the appropriations enumerated under the head of "Societies" in said appropriation bill, as required by Article IV, Section 14, of the Constitution?

"*Second:* If the first question is answered in the affirmative, was a vote of two-thirds of the members elected to the Senate again necessary for an assent to the appropriations enumerated under the head of "Societies" in said appropriation bill upon the passage of the bill in concurrence as a whole?

"*Third:* If the first question is answered in the negative, was the said appropriation bill, other than the appropriations enumerated under the head of "Societies," passed in concurrence by the Senate, as required by Article XV, Section 1, of Amendments to the Constitution, for presentation to the Governor?

"*Fourth:* If the first question is answered in the negative, was the said appropriation bill in an amended form passed by the senate to be communicated to the House of Representatives?"

Accompanying said questions are the following papers, viz.: House Act No. 770, entitled, "An Act Making Appropriations for the Support of the State of Rhode Island for the

Fiscal Year Ending on the 30th Day of November, 1923," being the proposed act referred to in your questions as the "appropriation bill," also a copy of the resolution of your body requesting our answer to said questions, containing in a preamble an outline of the travel of said proposed act up to the third and fourth days of May, 1923, when the same was acted upon by the senate, and also a copy, among others, of the records of the proceedings in the senate on the third and fourth days of May, 1923, relating to said proposed appropriation act, certified as correct by the deputy secretary of state, acting as secretary of the senate.

Upon receipt of your request we gave notice that on May 15, 1923, we would hear the arguments and receive the briefs of counsel representing parties interested in said questions. At the hearing thus accorded counsel appeared and presented arguments upon the questions of law involved in your questions.

Although it was sought at the hearing before us to attack the correctness of the certified copy of the proceedings of the senate for May 4, 1923 in some particulars, no question was raised as to the accuracy of the following: "Senator Cole moves the passage of the act as a whole. The roll is called. Twenty-two Senators voting in the affirmative and 13 Senators voting in the negative. The President of the Senate declares that the Act fails of passage, stating that in accordance with Section 14 of Article IV of the Rhode Island Constitution, the Act requires a two-thirds vote of all members elected to the Senate, said Act carrying an appropriation for private purposes."

The legal uncertainties, to which your questions relate, arise by reason of the provisions of Section 14, Article IV of the Constitution. In accordance with Section 6, Article IV of the Constitution, for most purposes, a majority of the members of each house of the General Assembly shall constitute a quorum to do business. Section 14, Article IV, however, provides as follows: "Section 14. The assent of two-thirds of the members elected to each house of the

general assembly shall be required to every bill appropriating the public money or property for local or private purposes."

It appears by reference to the copy of said proposed appropriation act and to the preamble of your resolution, that, when the act was passed in your body and afterwards acted upon by the senate, it contained under the separate heading of "Societies," fourteen items appropriating money for the benefit of certain societies or associations established for charitable or educational service within the state. By reason of the constitutional provision referred to above it is plain that the passage of said fourteen items by the senate required the assent of two-thirds of the members elected thereto. We find upon an examination of the general appropriation acts, appearing in the Public Laws, that it has been the custom of the General Assembly for many years in the past to incorporate in acts, making general appropriations for public purposes, items for the aid of charitable associations, similar to the fourteen items enumerated under the heading "Societies" in the proposed act now under consideration. The joining of appropriations for public and private purposes in one act, may at times lead to some apparent confusion, as in the instant case. Such method of procedure is within the authority of the General Assembly, and although the appropriations for private purposes contained in such an act may not receive the assent of two-thirds of the members and thus fail of passage in either house, a majority of a quorum of that house is not thereby deprived of its power to pass the public appropriations in the act.

In case a general appropriation act containing distinct and separable appropriations for public and private purposes should receive the approval of the governor and become enrolled and promulgated as law, and if later its constitutionality be questioned before us, and it be made to appear by the legislative journals of either house that in such house the act had received in its favor the votes of a majority of a

quorum of such house but not of two-thirds of the members elected thereto, then, in such circumstances, in accordance with well settled principles of constitutional law and statutory construction early adopted and consistently followed in this state, we would not declare the whole act invalid but would strike out the independent appropriations for private purposes as not passed in accordance with constitutional requirement, and would approve the rest of the act as valid and constitutional. *State* v. *Copeland*, 3 R. I. 33; *State* v. *Snow*, 3 R. I. 64; *State* v. *Amery*, 12 R. I. 64; *Newport* v. *Horton*, 22 R. I. 196. Similar power is in a house of the General Assembly, while such an act is pending before it. If such an act receive the assent of a majority, but not of (2) two-thirds of the members elected to that house, the house may treat the appropriations for private purposes as having dropped from the bill, and those for public purposes as having passed. To hold otherwise would be to give a strained and unreasonable construction to the provisions of Section 14, Article IV of the Constitution. Constitutional (3) provisions should be construed in accordance with their plain intent. The sole purpose of said Section 14, Article IV, is to prevent the appropriation of public money or proerty for local or private purposes by a vote of less than two-thirds of the members of each house. It aimed at no further restriction upon the constitutional powers of the majority of a quorum of the houses of the General Assembly.

The votes in the affirmative upon the motion of Senator Cole that the act be passed as a whole were of more than a majority of a quorum of the senate, and hence were sufficient to pass the public appropriations contained in the bill, they were less than two-thirds of the number of members elected to the senate and hence insufficient to pass the private appropriations in the bill. It is contended, however, that these private appropriations had been unanimously passed by the senate during the prior consideration of the bill on May 4, 1923. In support of that contention we are referred to the following in the certified copy of the record of the proceed-

ings of the senate for that day.  After enumerating the four-
teen items in question the record proceeds: "Senator
Sanderson moves the passage of all the above items under
the heading 'Societies', Pages 30 and 31, by a roll call vote,
said items requiring the assent of two-thirds of the members
elected to the senate.  The said items are unanimously
passed upon a roll call vote, 35 senators voting in the
affirmative, there being no votes in the negative." The
accuracy of this portion of the records certified is attacked.

(4) This court will not assume to contradict or impeach the
journal of the senate upon any charge of fraud or mistake;
nor will it pass upon a disputed question of fact as to what
proceedings were taken in the senate.  The power to deter-
mine the correctness of its journal is solely in the senate
itself, and no other authority may intermeddle therein.
For the purpose of this advisory opinion to your body, how-
ever, we may with propriety interpret the records of the
(5) senate in the light of the facts appearing upon such records,
and give to them the construction warranted in law.  We
treat the statement of Senator Sanderson's motion and the
senate's action thereon, standing in the record, as correct,
and will consider whether, in the circumstances, that state-
ment justifies the conclusion that the senate, in unanimously
adopting the motion, finally passed the private appropria-
tions, as is contended on one side, or tentatively made the
fourteen items a part of the bill, in accordance with common
legislative procedure.  The motion by its terms would not
clearly bring to the minds of the senators that they were
called upon to sanction the appropriation as a finality and
that the matter would not come before them again in acting
upon the bill as a whole.  It may well be that such purpose
was definitely in the mind of the mover of the motion and
in the minds of some of those who voted for it; but we are
considering what, in the circumstances, is a fair interpre-
tation to place upon the action of the senate in unanimously
adopting the motion.  Some color is given to the claim of
finality by reason of the language that the "passage" of the

items was moved; but it appears by the records that in the proceedings of the senate on that day the word "passed" was used to denote the action of the senate in making items "stand as a part of the Act." In the record, before the portion now under consideration, we find the entry "All items in the Act to the fourth item on Page 7 having *passed* on Thursday May 3rd, the succeeding items are read and all items to which no objection is made, stand as part of the Act." No claim is made that the items in the act standing before the fourth item on page 7 had been finally "passed" on the previous day, and reference to the record of May 3 shows that they had been adopted merely to stand as part of the act. It thus appears that the word "passed," or the related form "passage," when used in the senate on that day, might be regarded as appropriate to designate the mere adoption of an item to stand temporarily as part of the bill.

(6) In the consideration of the proposed appropriation bill, up to the vote upon Senator Cole's motion, the senate was in effect acting as a committee of the whole, seeking to mould the act into suitable form for convenient and speedy final action. During that time, unless a different intention indisputably appears, any action of the senate should be construed as expressing a tentative purpose only.

The intention of the senate is further shown by its action upon Senator Cole's motion, when without objection, or suggestion of a limitation upon its action by reason of the unanimous adoption of Senator Sanderson's motion, the senate acted upon "the passage of the act as a whole."

Light is also thrown upon the senate's intention by the action of sixteen senators, comprising more than one-third of the members of that body. At the opening of the next legislative day these sixteen senators voted that the records of May 4th be amended so that it might appear that the unanimous vote of the senate on the Sanderson motion was not that said fourteen items be finally passed, but that they stand as part of the act. Although twenty-two senators voted against such amendment of the record, it appears by the action of the sixteen, that it was not the intention of two-

thirds of the members of the senate, in the vote on the Sanderson motion, to assent to the final passage of the private appropriations in accordance with the requirement of the Constitution.

Our opinion is that the legal construction to be placed upon the senate's action on the motion of Senator Sanderson is that it did not affect the final passage of said fourteen items of private appropriations.

In accordance with the foregoing we answer your first question in the negative.

By reason of our answer to the first question, no answer to the second is required.

In answer to the third question we say: More than a majority of the senators voted in favor of the act. The (7) ruling and declaration of the President of the senate that the act failed of passage in the senate was erroneous in law, in as far as that ruling and declaration related to the items of appropriations for public purposes contained in the bill. Those items were passed. The appropriations enumerated under the head of "Societies" dropped from the bill by reason of the action of the senate, and the bill in the form in which it was left as the result of that action should not at this time be presented to the Governor for approval in compliance with the provisions of Article XV, Section 1 of Amendments to the Constitution.

In answer to the fourth question we say that said appropriation bill in its present amended form should be communicated by the senate to the house of representatives for further action by your body.

WILLIAM H. SWEETLAND,
WALTER B. VINCENT,
CHARLES F. STEARNS,
JOHN W. SWEENEY.

(Because of serious illness in his family Mr. Justice RATHBUN did not participate in the within opinion.)