394 A.2d 1338.

WILLIAM H. BAILEY *et al. v.* LEO P. BARONIAN *et al.*

JUNE 30, 1978.

PRESENT: Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   We have treated this petition as one for certiorari seeking review of the Providence Board of Canvassers and Registration (the board) striking the petitioner's name from the list of qualified voters in the city of Providence instituted pursuant to the provisions of G.L. 1956 (1969 Reenactment) §17-10-12.[1]

The facts culminating in the instant petition have been set forth previously by this court and need not be extensively reviewed. *Bailey* v. *Burns*, 118 R.I. 428, 375 A.2d 203 (1977). At a hearing before the board on August 31, 1977, counsel for petitioner stipulated that Mr. Bailey was "presently serving a term of two to four years in Michigan for the crime of larceny." *Mich. Stat. Ann.* §28.592.[2] Acting

[1]Inasmuch as the named petitioner also sought review of a decision of the Rhode Island House of Representatives excluding him from membership in that body, certain legislative leaders were also named as individual respondents. Three "residents and qualified voters" from Mr. Bailey's district, the 19th Representative District, were also named as individual petitioners. Since the validity of the legislative decision hinges upon whether Mr. Bailey is a "qualified elector," we issued an order directing the parties to file briefs on the sole question of whether the board acted contrary to law in striking the petitioner's name from the voting list. R.I. Const. amend. XXXIX, §1. In this opinion we shall consider Mr. Bailey as being the sole petitioner. Our consideration of this facet of his petition is without prejudice to his right to reassert the other claims that are described in this petition.

[2]That section provides as follows:

> "Any person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony."

pursuant to amendment XXXVIII[3] of the Rhode Island Constitution, the board struck Mr. Bailey's name from the list of qualified voters. Mr. Bailey thereupon filed the instant petition. Section 17-10-12.

The sole issue presented in this facet of the petition is the scope of that portion of amendment XXXVIII which disenfranchises persons "convict[ed] of a felony." Specifically, the question is whether one serving a sentence for a felony in a sister jurisdiction is disqualified by reason of that provision. The petitioner argues that amendment XXXVIII disqualifies only those persons convicted of a felony in the courts of Rhode Island. The board contends that the provision disenfranchises all those convicted of felonies in any of the 50 states, or in the courts of the United States. Both argue in the alternative for a middle position, which would disenfranchise all convicted felons, including those convicted in foreign jurisdictions, if the crime for which they were convicted would also constitute a felony under the laws of the State of Rhode Island. They disagree, however, as to whether the Michigan crime for which petitioner was convicted, larceny from a building, would constitute a felony in Rhode Island.

In construing constitutions, our chief purpose is to give effect to the intent of the makers. *In re House of Representatives,* 45 R.I. 289, 120 A. 868 (1923). Ordinary words are to be given their usually accepted meaning, and we must presume the language was carefully weighed and that its terms imply a definite meaning. *Opinion to the Governor,* 62 R.I. 316, 6 A.2d 147 (1939); *Blais* v. *Franklin,* 31 R.I. 95, 77 A. 172 (1910). We must look to the history of the

---

[3]Amendment XXXVIII, §1, of the Rhode Island Constitution sets forth the qualifications for voters. One must be a citizen of the United States, 18 years of age or over, a resident for 30 days or more, and have registered at least 30 days prior to election day. Section 1 continues:

"Nor shall any person otherwise qualified to vote as provided in this article be permitted to vote while serving a prison sentence on final conviction of a felony nor subsequent to such imprisonment until the franchise shall have been restored by an act of the general assembly."

time and examine the state of things existing when it was framed and adopted, to ascertain the old law, the mischief and the remedy. *State of Rhode Island* v. *Commonwealth of Massachusetts*, 12 Pet. 657, 37 U.S. 657, 9 L. Ed. 1233 (1838).

Although amendment XXXVIII was adopted by the people in 1973, the disenfranchisement of certain criminals has been a permanent fixture in our constitution since it was first adopted in 1842. R.I. Const. art. II, §4. Despite the longevity of this provision, this court has never had occasion to consider whether the disqualification provision extends to those convicted of crimes in our sister states. Amendment XXXVIII was adopted following a limited constitutional convention convened pursuant to P.L. 1973, ch. 98. The 1973 convention was convened to consider amendments to the constitution on four subjects, one of which was the "revision of the election laws." P.L. 1973, ch. 98, §1. The convention referred all matters regarding the revision of the election laws to the Committee on Elections chaired by William T. Murphy, Jr.

In due course the committee submitted "Proposal 19," entitled "Of Suffrage," to the full convention. As originally proposed by the committee, the disenfranchisement provision was virtually identical to the provision which then existed in the constitution in amendment XXIV:

> "Nor shall any person convicted of bribery or of any crime deemed infamous at common law be permitted to exercise that right, until he be expressly restored thereto by act of the general assembly."[4]

---

[4]Compare with amendment XXIV:

"Nor shall any person convicted of bribery, or of any crime deemed infamous at common law, be permitted to exercise that privilege, until he be expressly restored thereto by act of the general assembly."

Amendment XXIV, adopted in 1950, was annulled by the adoption of amendment XXXVIII in 1973.

Transcript of the 1973 Rhode Island Constitutional Convention, 6-47-48 (hereinafter "Transcript").

Two questions were raised by the delegates regarding this provision. Roderick A.J. Cavanagh noted that the "infamous crimes" language had been in the constitution in one form or another since 1842 and that the law had changed considerably since that time.[5] Specifically, he noted that Rhode Island now has many statutory felonies which were not crimes or infamous crimes at common law. Frank Caprio felt that there was a problem with the word "convicted" and its application to one who pleaded *nolo contendere* and received a suspended sentence. These two objections were viewed as legal questions and, upon motion by Edward R. MacLaughlin, Jr., Proposal 19 was referred to the Committee on Style and Drafting. Transcript at 6-68.

The Committee on Style and Drafting proposed the following language to eliminate any ambiguity or uncertainty which may have existed under the prior language:

> "Nor shall any person otherwise qualified to vote as provided in this article be permitted to vote while serving a prison sentence on final conviction of a felony nor subsequent to such imprisonment until the franchise shall have been restored by an act of the general assembly."

The handiwork of the committee was adopted without further debate and is presently found in amendment XXXVIII. No one, insofar as we have been able to discover, indicated by way of statement, question, or objection whether this provision disqualifies a person who is convicted of committing a crime which is considered a felony in one of our sister states.

Although the minutes of the 1973 convention do not directly address the issue with which we are concerned, they

---

[5] In *State v. Rezendes*, 105 R.I. 483, 253 A.2d 233 (1969), we traced the origin and subsequent development of the "infamous crime" concept.

do reveal two important interpretive considerations. First, the substitution of the phrase "conviction of a felony" for the prior language regarding crimes "deemed infamous at common law" apparently was viewed by the delegates as simply a stylistic modification of an outmoded provision. Second, the requirement that the voter have served a "prison sentence" before he or she may be disenfranchised was adopted to preserve the franchise of persons who plead *nolo contendere* and receive a suspended sentence.

In the absence of any clear indication of the intent of the drafters of our constitution, or of any precedential decisions by this court, it is appropriate for us to look to the cases from other jurisdictions which have interpreted similar provisions. *Merlino* v. *Tax Assessors*, 114 R.I. 630, 639, 337 A.2d 796, 802 (1975). However, these criminal disenfranchisement provisions are extremely diverse[6] and, therefore, many of the cases from other jurisdictions are simply inapposite. The Georgia constitution, for instance, is rather clear that those convicted elsewhere are to be disqualified if the crime is one of moral turpitude according to the laws of Georgia. Ga. Const. §2-501; *Hulgan* v. *Thornton*, 205 Ga. 753, 55 S.E.2d 115 (1949). Approximately one-third of the states list specific offenses for which criminals can be prohibited from voting — frequently including bribery[7] and larceny.[8] Note, *Restoring the Ex-Offender's Right to Vote: Background and Developments,* 11 Am. Crim. L. Rev. 721, 727 (1973). In such cases courts generally interpret the constitution or statute as disenfranchising anyone convicted of the specified crime, regardless of where the conviction occurred. In *Application of Smith,* 8 N.J. Super. 573, 73 A.2d 761 (1950), for instance,

---

[6]Project – *The Collateral Consequences of Criminal Conviction,* 23 Vand. L. Rev. 929, 975 (1970). For an exhaustive analysis of the various disenfranchisement provisions see Note, *Restoring the Ex-offender's Right to Vote: Background and Developments,* 11 Am. Crim. L. Rev. 721 (1973).

[7]*E.g.,* Ala. Const. art. VIII, §182; Wisc. Const. art. III, §6.

[8]*E.g.,* Ga. Const. §2-501; Wisc. Const. art. III, §6.

the court held that an individual convicted of larceny in Ohio was disenfranchised in New Jersey under a statute which denied the vote to those convicted of larceny.[9] While some states disenfranchise those convicted of a "felony"[10] or a crime involving "moral turpitude,"[11] many have some combination of the above provisions.[12]

As noted above, there is a diversity of judicial opinion when courts have been called upon to interpret these disqualification provisions. Project – *The Collateral Consequences of a Criminal Conviction*, 23 Vand. L. Rev. 929, 960-66 (1970). Some hold that the provision disqualifies only those convicted in the courts of that jurisdiction.[13] The majority apparently hold that a conviction anywhere, whether in the courts of a sister state or the United States, disqualifies an otherwise eligible voter.[14] A third group adopts what may be called a

---

[9]The New Jersey statute was subsequently declared unconstitutional. *Stephens* v. *Yeomans*, 327 F. Supp. 1182 (D. N.J. 1970). The court reasoned that the statutory scheme which permitted those convicted of, *inter alia*, embezzlement, kidnapping, and extortion to vote, but denied the franchise to one convicted of larceny of an automobile, constituted a denial of equal protection. The Legislature responded by disenfranchising all those convicted of any indictable offense under the laws of any jurisdiction, but only for the period while they are serving sentence, or on probation or parole. N.J. Stat. Ann. §19:4-1 (West).

[10]*E.g.*, Kan. Const. art. 5, §2; R.I. Const. amend. XXXVIII.

[11]*E.g.*, Ala. Const. art. VIII, §182; Ga. Const. §2-501.

[12]*See* Project – *The Collateral Consequences of a Criminal Conviction*, 23 Vand. L. Rev. 929, 975-81 (1970). Rhode Island's prior constitutional provision was of this variety. R.I. Const. amend. XXIV, §1, ("convicted of bribery, or of any crime deemed infamous at common law").

[13]*E.g., Hildreth* v. *Heath*, 1 Ill. App. 82 (1878); *Crothers* v. *Jones*, 239 La. 800, 120 So. 2d 248 (1960); *State ex rel. Mitchell* v. *McDonald*, 164 Miss. 405, 145 So. 508 (1933); *Isaacs* v. *Board of Ballot Comm'rs*, 122 W. Va. 703, 12 S.E.2d 510 (1940). *But see Cardon* v. *Dauterive*, 264 So. 2d 806 (La. App. 1972).

[14]*E.g., Otsuka* v. *Hite*, 64 Cal. 2d 596, 414 P.2d 412, 51 Cal. Rptr. 284 (1966); *Crampton* v. *O'Mara*, 193 Ind. 551, 139 N.E. 360 (1923); *dismissed*, 267 U.S. 575, 45 S. Ct. 230, 69 L. Ed. 795 (1924); *State ex rel. Barrett* v. *Sartorius*, 351 Mo. 1237, 175 S.W.2d 787 (1943); *State ex rel. Chavez* v. *Evans*, 79 N.M. 578, 446 P.2d 445 (1968); *State ex rel. Olson* v. *Langer*, 65 N.D. 68, 256 N.W. 377 (1934). *See also* Annot., 39 A.L.R.3d 303 (1971).

"middle position," which requires the disenfranchising state to apply its own law to the foreign conviction and determine whether the criminal charge would constitute a felony in the disenfranchising state.[15]

Of the three positions, the middle ground is easiest to reject. While it may be theoretically or conceptually most appealing, it is, as this case demonstrates, practically unworkable. There is no Rhode Island criminal statute directly analogous to Mich. Stat. Ann. §28.592, the crime for which petitioner was convicted. *See* note 2 *infra*. More importantly we do not have any record of the Michigan proceedings. All we have is a fact sheet from the Michigan Department of Corrections indicating that petitioner was convicted of "larceny from a building," a crime carrying a maximum penalty of 4 years' imprisonment. Counsel for petitioner has alleged that petitioner was prosecuted in Michigan for shoplifting certain records worth under $100, and, therefore, could only be convicted of G.L. 1956 (1969 Reenactment) §11-41-20 (shoplifting), a misdemeanor. Nothing in the record before us supports this allegation. Without any proof as to the value of the property taken by petitioner, it is impossible to determine whether he would have been guilty of a felony or a misdemeanor under Rhode Island law. Sections 11-41-1, 11-41-5.[16] The board's contention that petitioner would have been convicted of §11-8-3[17] is equally speculative, for neither "felonious intent" nor the time of day were elements of the Michigan crime.

---

[15]*E.g., State ex rel. Arpagus v. Todd*, 225 Minn. 91, 29 N.W.2d 810 (1947); *Melton v. Oleson*, 165 Mont. 424, 530 P.2d 466 (1974); *Elder v. County Election Bd.*, 326 P.2d 776 (Okla. 1958).

[16]If the value of stolen property exceeds $500, the theft is classified under §11-41-5 as a felony. *See State v. Aurgemma*, 116 R.I. 425, 358 A.2d 46 (1976).

[17]General Laws 1956 (1969 Reenactment) §11-8-3 provides:

"Entry of building or ship with felonious intent. — Every person who, with intent to commit * * * larceny, shall, * * * during the daytime, enter any other building * * * shall be imprisoned not more than ten (10) years or be fined not more than five hundred dollars ($500) or suffer both such fine and imprisonment."

It is also worthy of note that it is the local boards of canvassers who are required to make these complicated, if not speculative, determinations. G.L. 1956 (1969 Reenactment) §17-10-6. If, as the previous paragraph indicates, this court is unable to make such a determination in the absence of a full record, it is, at the risk of sounding presumptions, unrealistic to expect the local boards to do so. While some courts may wish to engage in these speculative mental gymnastics, this court does not. *See Gutterman* v. *State*, 141 So. 2d 21 (Fla. App. 1962).

Having rejected the middle position, we must now decide whether amendment XXXVIII disenfranchises persons convicted of felonies in other jurisdictions, be they federal or state. The petitioner strenuously contends it does not, but was intended to disqualify only those convicted of committing felonies in the state of Rhode Island. The principal argument in support of this interpretation is that the qualifications (or disqualifications) for voting in Rhode Island would remain subject to Rhode Island law.[18] The Supreme Court of Minnesota found this argument particularly persuasive:

> "[I]s it not *this* State which prescribes the moral qualifications of *its* voters, and not one of the forty-seven other States or the Federal Government? Have we by the constitutional and statutory provisions aforesaid turned over to those other jurisdictions the power to impose conditions of disenfranchisement upon our voters, or put it in the hands of the governor or some other state to reinstate them by a pardon for a crime committed there?" *State ex rel. Arpagus* v. *Todd*, 225 Minn. 91, 97, 29 N.W.2d 810, 813 (1947), *quoting State ex rel. Barrett* v. *Sartorius*, 351 Mo. 1237, 1247, 175 S.W.2d 787, 791 (1943)(Ellison, J., concurring).

---

[18]The General Assembly specifically defined what constitutes a felony in Rhode Island when it stated: "Unless otherwise provided, any criminal offense which at any given time may be punished by imprisonment for a term of more than one (1) year, or by a fine of more than five hudnred dollars ($500), is hereby declared to be a felony * * *." General Laws 1956 (1969 Reenactment) §11-1-2.

The petitioner also contends that §13-6-2, which disenfranchises persons sentenced to imprisonment in the Adult Correctional Institutions for more than 1 year, is "interpretive" of amendment XXXVIII and "limits" disqualification to those who have served more than 1 year in the Adult Correctional Institutions. But this argument misses the mark. No act of the General Assembly can "limit" a provision of the constitution.

The major drawback to the position advanced by petitioner is that it would lead to results which are, to say the least, anomalous. It is difficult to conclude that the framers of our constitution intended that one guilty of a Rhode Island felony should be disqualified, but that one guilty of an equally or more reprehensible act under laws of another jurisdiction should remain qualified. Under this view, a person convicted of engaging in a previoulsy planned fight with another would, because of the provisions of §11-12-8, be considered a felon, whereas a husband who murdered his wife in one of our neighboring states and then moved to Rhode Island would be entitled to appear at the polls and vote. Such a result has been declared "anomalous, illogical, and unjust." *Crampton* v. *O'Mara*, 193 Ind. 551, 557, 139 N.E. 360, 362 (1923).

The position advanced by the board, that a felony conviction anywhere would disqualify a Rhode Island voter, would avoid the anomalous results noted above but would, however, create a few of its own.

> "Would it not be equally unjust and discriminatory to deny a citizen of this state the right to vote because he had previously been convicted of an unpardoned crime in another state, which that state had denominated a felony, while at the same time other citizens of [Rhode Island] were doing the same thing every day in our very presence, and yet voting without hindrance because the act is only a misdemeanor, or not a criminal offense at all, in [Rhode Island]?" *State ex rel. Barrett* v. *Sartorius,*

> 351 Mo. at 1247, 175 S.W.2d at 791 (Ellison, J., concurring).

A single example should suffice. Until 1975, Louisiana made it a felony to enter into a common-law marriage. La. Rev. Stat. Ann. §14:79.1 (West).[19] Rhode Island, on the other hand, has always recognized common-law marriages as valid marriages. *Sardonis* v. *Sardonis,* 106 R.I. 469, 261 A.2d 22 (1970). Under the "felony anywhere" approach advanced by the board, an individual convicted under this Louisiana statute would be disqualified from voting in Rhode Island.

Choosing between these alternative interpretations is no easy task because neither affords the all-perfect solution. A number of considerations, however, compel us to conclude that the "felony anywhere" rule is more in conformity with the intent of the framers and represents the sounder view. First and foremost is the lack of any textual support in the constitution for the position advanced by petitioner. Amendment XXXVIII speaks of final convictions "of a felony." If, as petitioner contends, the 1973 delegates intended the phrase "Conviction of a felony" to mean "conviction of a felony in the courts of Rhode Island," they would, or should, have said so.

A second reason why we embrace the "felony anywhere" approach stems from our belief that the interpretation we adopt today is more in conformity with the general purposes and policies which underlie this provision. The justification most often advanced for criminal disenfranchisement provisions is that they help preserve the "purity of the ballot box." *Washington* v. *State,* 75 Ala. 582, 585 (1884); *Application of Smith,* 8 N.J. Super. 573, 574-75, 73 A.2d 761, 762 (1950); Project – *The Collateral Consequences of a Criminal Conviction,* 23 Vand. L. Rev. 929, 982 (1970). The presumption here is that a felon is somehow more likely to use his franchise to debase the political process. Note, *New*

---

[19]This provision was repealed by 1975 La. Acts 638, §3.

*Approaches to the Civil Disabilities of Ex-Offenders,* 64 Ky. L.J. 382, 412 (1975). A second, and more theoretical, justification rests on John Locke's concept of the social compact. A felon, it is argued, has abandoned his or her right to participate further in administering the compact. *Green v. Board of elections,* 380 F.2d 445, 451 (2d Cir. 1967), *cert. denied,* 389 U.S. 1048, 88 S. Ct. 768, 19 L. Ed. 2d 840 (1968). Finally, disenfranchisement has been viewed simply as a punitive provision. Note, *The Need for Reform of Ex-Felon Disenfranchisement Laws,* 83 Yale L.J. 580, 585 (1974). While some have expressed doubts as to the validity of these policies,[20] we have no doubt that these policies actually motivated the framers of our constitution and other consitutions to include within their respective constitutions language similar to amendment XXXVIII's bar against convicted felons. It is our belief that the "felony anywhere" approach best serves these policies. In fact, it is difficult to see how any of the above policies would be served by applying a territorial limitation to the scope of our amendment XXXVIII.

Finally, we embrace the "felony anywhere" interpretation because whatever unjust or anomalous situations may arise may be cured or ameliorated by the General Assembly. Amendment XXXVIII specifically empowers the General Assembly to restore the voting rights of felons. Thus, to complete the hypothetical, the person convicted of common-law marriage in Louisiana could have his or her voting rights restored at any time. While such a remedy is, as petitioner's case demonstrates,[21] an imperfect one, it is, nevertheless a

---

[20]*See Richardson v. Ramirez,* 418 U.S. 24, 78-79, 94 S. Ct. 2655, 2683, 41 L. Ed. 2d 551, 585 (1974)(Marshall, J., dissenting); Note, *New Approaches to the Civil disabilities of Ex-Offenders,* 64 Ky. L.J. 382, 409-23 (1975); Note, *Disenfranchisement of Ex-Felons: A Reassessment,* 25 Stam. L. Rev. 845, 856-63 (1973); Project – *The Collateral Consequences of a Criminal Conviction,* 23 Vand. L. Rev. 929 (1970); Note, *The Need for Reform of Ex-Felon Disenfranchisement Laws.* 83 Yale L.J. 580 (1974).

[21]At the General Assembly's January 1978 session, a bill which would have restored the petitioner's franchise failed of passage. The bill passed the Senate but was rejected by the House of Representatives. Journal of the House of Representatives, Vol. 94, No. 45, at 4 and 5.

remedy. Were we to adopt the interpretation advanced by petitioner, nothing short of a constitutional amendment could eliminate the anomaly which arises when a person convicted of a serious felony in another jurisdiction — murder, bribery, election fraud — registers to vote in Rhode Island.

Thus, we hold that persons otherwise qualified to vote who are convicted of felonies and have served time in prison in this or any jurisdiction (federal or state) are disqualified from voting by reason of amendment XXXVIII of the Rhode Island Constitution, unless and until the General Assembly restores that right.[22]

The petition for certiorari insofar as it relates to the striking of the petitioner's name from the list of qualified voters is denied and dismissed, the writ heretofore issued is quashed, and the record certified to us is returned to the respondent board with our decision endorsed thereon. This dismissal is without prejudice to the petitioner's right to reassert the other contentions made in this petition.

Mr. Chief Justice Bevilacqua did not participate.

*John A. O'Neill, Jr.,* for petitioners.

*Carroll, Kelly & Murphy, Joseph A. Kelly, Ronald H. Glantz,* Acting City Solicitor, *Gerald G. Norigian,* Assistant City Solicitor, for respondents.

---

[22]The disenfranchisement of convicted felons, even those who have completed their sentences and paroles, does not contravene the equal protection clause of the fourteenth amendment. *Richardson* v. *Ramirez,* 418 U.S. 24, 94 S. Ct. 2655, 41 L. Ed. 2d 551 (1974).