Arlene VIOLET, Attorney General of
the State of Rhode Island

v.

Joseph VOCCOLA.

No. 85–43–M.P.

Supreme Court of Rhode Island.

Aug. 20, 1985.

Arlene Violet, Atty. Gen., Thomas M. Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

Keven A. McKenna, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on an original petition for quo warranto filed by the Attorney General in order to determine the right of Joseph Voccola (Voccola) to hold the office of Councilman from the 4th District of the Town of Johnston. The essential facts underlying the petition are undisputed. These facts are set forth in the pleadings and admitted by Voccola in his brief.

On September 5, 1984, Voccola pleaded guilty in the United States District Court to three offenses, each involving the sale in the State of Massachusetts of an automobile with a false odometer statement in violation of the provisions of 15 U.S.C.A. § 1988(b) (West 1982). Pursuant to the plea of guilty, the United States District Court judge sentenced Voccola to imprisonment for one year, followed by a period of probation for three years, and imposed a fine of $25,116. The offense was classified by 18 U.S.C.A. § 1 (West 1969), as a misdemeanor.

On November 4, 1984, subsequent to the entry of the plea of guilty (but prior to the imposition of sentence), Voccola was reelected to the office of Councilman from the 4th District of the Town of Johnston.

The term for which he has been elected is a two-year term that will expire on January 12, 1987. Johnston Town Code, art. III, § 3–1 (1982). The Attorney General by her petition challenges the right of Voccola to hold this office since, she claims, he is no longer a qualified elector pursuant to the provisions of article 38 of amendments of the Rhode Island Constitution and, consequently, has been rendered ineligible to hold office by virtue of article 39 of amendments of the Rhode Island Constitution. Article 39 provides that "[n]o person shall hold any civil office unless he be a qualified elector for such office." Article 38 provides in pertinent part:

"Nor shall any person otherwise qualified to vote as provided in this article be permitted to vote while serving a prison sentence on final conviction of a felony nor subsequent to such imprisonment until the franchise shall have been restored by an act of the general assembly."

It is the Attorney General's contention that these two provisions read together disqualify Voccola from serving as councilman. Specifically, the argument is that because Voccola's conviction under the federal statute makes him ineligible to vote, he therefore is ineligible to hold the public office to which he has been elected.

Voccola responds by asserting that this court has no power pursuant to its jurisdiction of the writ of quo warranto to determine that he is ineligible to vote, and further, even if the court had jurisdiction to entertain this petition, Voccola has not been convicted of a felony and therefore is not ineligible under the terms of article 38.

I

## IS QUO WARRANTO APPLICABLE TO THIS CONTROVERSY?

This court has recognized in *Black v. Cummings*, 62 R.I. 361, 5 A.2d 858 (1939), that a challenge to the right of a person to hold office in vindication of a public right as opposed to a private right must be

brought by the Attorney General and cannot be brought without the intervention of that state official. In so holding, this court applied a principle long recognized by English common law and applied by the Supreme Court of the United States in *Newman v. United States*, 238 U.S. 537, 35 S.Ct. 881, 59 L.Ed. 1446 (1915). In the latter case, the Supreme Court observed that only the Attorney General or a special prosecutor was authorized to institute quo warranto proceedings against usurpers of public office and that a private citizen was not authorized to institute such proceedings unless such a person claimed a superior title to that office. Voccola does not challenge the right of the Attorney General to institute quo warranto proceedings in order to test the right of an incumbent to hold public office but claims that this proceeding can no longer be initiated by the Office of the Attorney General in view of the provisions of G.L.1956 (1981 Reenactment) § 17–1–3.4, as amended by P.L. 1983, ch. 172, § 3, which provide that any elector may challenge the registration of any other voter by filing an affidavit with the local board of canvassers stating that such person is not eligible to vote. Voccola construes this statute to mean that the initial challenge of a right to vote must now be made before the local board of canvassers and cannot be asserted directly before this court. We cannot accept this construction.

In *Fargnoli v. Cianci*, 121 R.I. 153, 397 A.2d 68 (1979), we noted that the ancient writ of quo warranto has not been issued in this jurisdiction since the adoption of the Rhode Island Constitution in 1842. Generally litigants, even with the intervention of the Attorney General, have chosen relief by way of an information in the nature of quo warranto. In *State v. Brown*, 5 R.I. 1, 7 (1857), Chief Justice Ames observed that the writ and the information performed the same function. Historically, the writ of quo warranto was

"a civil remedy and issued out of chancery as a matter of course in favor of the crown. The [civil] writ [of quo warranto] fell into disuse and was replaced by [a writ of] information in the nature of quo warranto, a change attributed by Blackstone to the length of a quo warranto proceeding and the finality and conclusiveness of its judgment, even against the crown. With the passage of the Statute of Anne in 1711, 9 Anne, ch. 20, an information proceeding took on criminal overtones because a judgment could be entered calling for the imposition of a fine [as well as the] loss of office." *Cianci*, 121 R.I. at 161, 397 A.2d at 72.

*See Meehan v. Bachelder*, 73 N.H. 113, 59 A. 620 (1904). Indeed, in *Brown, supra,* the court imposed a fine of ten cents upon one whom it determined to be improperly holding the office of major general in the Rhode Island militia. However, although the writ may have fallen into disuse in England as well as in this state, it has not been abolished, and this court has been specifically afforded jurisdiction of the writ by virtue of G.L. 1956 (1969 Reenactment) § 8–1–2.

In our opinion, the Legislature did not intend to reduce the power of the Attorney General to prosecute a common-law writ of quo warranto through its enactment of G.L. 1956 (1981 Reenactment) § 17–1–3.4. Its sole intent was to extend to private parties the right to file a challenge in respect to an elector before the local board of canvassers. This statute should not be construed to reduce in any way the common-law powers of the Attorney General to test the right of a person to hold public office. It is true that some cases have come before us on petition for certiorari from decisions by the State Board of Elections subsequent to a determination by the board of canvassers. *See Gelch v. State Board of Elections*, —— R.I. ——, 482 A.2d 1204 (1984); *Bailey v. Baronian*, 120 R.I. 389, 394 A.2d 1338 (1978). However, this does not mean that the route followed by the Attorney General in this case is not equally appropriate since the Attorney General is not limited to filing a

challenge pursuant to the provisions of § 17–1–3.4.

■ In the instant case, all of the essential facts are agreed upon, and therefore, this controversy may be decided as a matter of law. Consequently, this court may decide this petition for quo warranto without the predicate of an evidentiary hearing before any other body or tribunal.

## II

### IS VOCCOLA DISQUALIFIED FROM HOLDING THE OFFICE OF COUNCILMAN BY VIRTUE OF HIS CONVICTION IN THE FEDERAL COURT?

The Attorney General has succinctly and accurately set forth the elements to be determined in answering the question posed by this issue. She states that under the provisions of article 38, in order to disenfranchise an individual, three elements must be established:

1. The conviction must be final.
2. The crime must be a felony.
3. The defendant must actually serve a term of imprisonment.

We agree with the Attorney General that Voccola's conviction is final and that he has been sentenced to serve a term of imprisonment. Consequently, the only legal issue presented to this court is whether Voccola committed a crime that may be defined as a felony for the purposes of article 38. On this last issue we must disagree with the conclusion advanced by the Attorney General.

■ We held in *Bailey, supra,* that in order to determine whether a crime constituted a felony, we would look to the law of the jurisdiction in which the conviction had taken place. In *Bailey* the petitioner had been convicted in Michigan of a crime described in that state as "larceny from a building." This crime in Michigan carried a maximum penalty of four years' imprisonment. We stated that Rhode Island had no identical crime, but we determined that a conviction of a crime classified as a felony in another jurisdiction would under the provisions of article 38 disqualify a person from voting in Rhode Island. We summarized our holding as follows:

"Thus, we hold that persons otherwise qualified to vote who are convicted of felonies and have served time in prison in this or any jurisdiction (federal or state) are disqualified from voting by reason of amendment XXXVIII of the Rhode Island Constitution, unless and until the General Assembly restores that right." *Bailey,* 120 R.I. at 401, 394 A.2d at 1344.

Applying the principles of *Bailey* to the case at bar leads us ineluctably to the conclusion that we must look to the law of the jurisdiction in which the conviction took place in order to determine whether the crime is a felony or a misdemeanor. It is undisputed that the crime of which Voccola was convicted, that of issuing a false odometer statement in violation of 15 U.S.C.A. § 1988(b) and 15 U.S.C.A. § 1990c (West 1982), has been determined by the Congress of the United States to be a misdemeanor by virtue of 18 U.S.C.A. § 1. In light of this determination, our inquiry must end. If the Congress has described the crime as a misdemeanor, it is not our function to attempt to determine whether this crime under Rhode Island law would have constituted a felony.[1]

---

1. Although under our holding Rhode Island law is not relevant to the determination of whether this crime is a felony or a misdemeanor, it is interesting to note that in July and August of 1979 when these offenses were committed, Rhode Island would also have classified the offenses as misdemeanors under G.L. 1956 (1968 Reenactment) § 31–23.2–7. This crime was then a misdemeanor punishable by a fine of not more than $100 for the first offense and not more than $200 for each succeeding offense. This statute was amended by P.L. 1984, ch. 256, § 1, to provide for a punishment for a first offense by imprisonment for not more than one year or a fine of not more than $500 or both, and for each succeeding offense, a punishment of not more than two years' imprisonment or a fine of not more than $2,000 or both (such succeeding offenses would now be felonies under Rhode Island law).

Since Voccola was convicted of a misdemeanor rather than a felony, the second question posed by the Attorney General in her brief must be answered in the negative. In view of the fact that Voccola has not been convicted of a felony, he is not disqualified as an elector under the provisions of article 38. Therefore, he is not ineligible to hold public office pursuant to article 39. He is consequently not disqualified to hold the office of councilman in the town of Johnston.

There is some suggestion in the Attorney General's brief that the respondent here has vacated the office of councilman by reason of his inability to serve effectively in that capacity while incarcerated in a federal penal facility. Unfortunate though this may be, we are not authorized by the Rhode Island Constitution or by any statute to declare an office vacant because of the temporary disability of an incumbent to perform all of the duties of that office. If the people of the State of Rhode Island, through their constitution, desire to disqualify a person from holding public office if that person is convicted of any offense that results in incarceration for any period, they would undoubtedly have the power to do so. However, in reading articles 38 and 39 together, it is apparent that the people have determined that only one criterion is sufficient to disqualify a public office holder. That criterion is conviction of a felony. Such conviction has not occurred in this case. It may also be the case that the voters of the town of Johnston, in formulating their charter, might have been more stringent in their provision for holding public office. However, no provision of the charter of the town of Johnston is cited to us that would render Voccola ineligible in the circumstances of this case to continue to hold the office of councilman.

For the reasons stated, the petition of the Attorney General is denied and dismissed. The respondent, Joseph Voccola, is legally entitled to retain the office of Councilman from the 4th District of the Town of Johnston.

BEVILACQUA, C.J., did not participate.