STATE EX REL. ANDERSON, APPELLANT, *v.* FOUSEK, MAYOR, RESPONDENT.

(No. 6,929.)

(Submitted January 19, 1932. Decided February 27, 1932.)

[8 Pac. (2d) 791.]

*Mr. Donald Campbell,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Warren Toole,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Defendant is mayor of the city of Great Falls, a city of the first class. Relator, Anderson, was appointed as lieutenant of the police force of the city and acted as such from March 18, 1929, until suspended as hereinafter stated. On December 17, 1930, relator, with other members of the police force, was charged by indictment filed in the district court of the United States for the district of Montana with the crime of wilfully, wrongfully, unlawfully, knowingly and feloniously conspiring, combining, confederating, and agreeing together and with each other and with divers other persons, to possess, keep for sale and sell intoxicating liquors containing more than one-half of one per cent. of alcohol by volume and fit for beverage purposes, and to maintain in the city of Great Falls a large number of common nuisances, to-wit, rooms, houses, buildings, structures and places where intoxicating liquors were to be possessed, kept for sale and sold for beverage purposes, and of doing acts to effect the object of the conspiracy, all in violation of the Act of Congress commonly known as the Jones Act (27 U. S. C. A., secs. 91, 92). He was found guilty by verdict of a jury, and was adjudged to pay a fine of $100 and to be imprisoned in case of default in payment. The

judgment of conviction has not been reversed, modified or set aside, and no appeal therefrom has been prosecuted. The time for paying the fine was extended beyond the time of the proceedings in the district court from which this appeal was taken.

After the conviction of relator, defendant here suspended relator from the police force and filed charges against him with the police commission of the city. Thereafter a hearing was had before the police commission, and, while the commission found that relator had been found guilty of the crime charged, it also found that the crime did not involve moral turpitude, and ordered his reinstatement. Within five days thereafter defendant ordered his permanent discharge from the police force. Relator applied to the district court for a writ of mandate to compel defendant to comply with the order of the commission by reinstating him. An alternative writ was issued. Defendant's motion to quash the alternative writ was granted, and the proceedings were dismissed. This appeal followed.

There is no dispute concerning the facts. While other questions are argued in the excellent briefs of counsel, the determinative question is one of law, viz.: Must the judgment of the court be sustained because of section 511, Revised Codes of 1921? That section in part provides: "An office becomes vacant on the happening of either of the following events before the expiration of the term of the incumbent: * * * 8. His conviction of a felony, or of any offense involving moral turpitude, or a violation of his official duties."

The first point of difference between the parties is whether ▪▪▪▪▪ a member of the police force of a city is the incumbent of an office within the meaning of section 511. Former decisions of this court sustain the contention of the defendant that members of the police force are officers. They "are guardians of the public safety and are directly chargeable with the enforcement of the laws." (*State ex rel. Mueller* v. *District Court*, 87 Mont. 108, 285 Pac. 928, 930.) Their duties concern the public directly, and are imposed by public authority and

not by contract. These are primary factors pointing to the conclusion that they are public officers and not mere servants or agents. (*State ex rel. Boyle* v. *Hall*, 53 Mont. 595, 165 Pac. 757; *State ex rel. Barney* v. *Hawkins*, 79 Mont. 506, 53 A. L. R. 583, 257 Pac. 411.)

In *State ex rel. Quintin* v. *Edwards*, 38 Mont. 250, 99 Pac. 940, 944, this court, in speaking of this question, said: "We think the courts whose decisions we have just referred to were unfortunate in the use of the term 'state officer,' and that they intended simply to hold that a policeman is a *public officer*, in the sense that he has certain public duties to perform other than those strictly pertaining to the government of the municipality. * * * There can be no doubt that a policeman is an 'officer' not only within the ordinary meaning of the term in the street, but strictly and technically speaking also. * * * Many other provisions might be cited showing that policemen in this state are charged with general duties under the state laws in addition to their local duties. What, then, is the result? It appears that a policeman occupies a sort of dual position. He is, strictly speaking, neither a state officer, as such, nor an officer acting in a purely local capacity. He may be said to be *sui generis*, occupying a unique place of his own, and so we are inclined to regard him. * * * Perhaps it is not out of place to notice at this time the argument of the appellant that policemen are mere employees or servants of the city. We cannot agree with this contention. To so hold would strip them as officers of all protection under the laws, and a result so grave should be avoided, if possible. Section 8180 of the Revised Codes [1907] provides that any person who attempts by means of any threat or violence to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer in the performance of his duty, is punishable by fine and imprisonment. Can it be doubted that one who resisted a policeman in the execution of a warrant issued by a justice of this court or a district judge would be guilty of resisting an officer?

\* \* \* It seems to us that the fact that the Legislature failed to declare that policemen should not be deemed officers of the municipal corporation is significant of the intention of that body to regard them as officers of some sort. We think policemen are not mere servants or employees of a city." This ruling was adhered to in the later case of *State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695.

In the still later case of *Peterson* v. *City of Butte,* 44 Mont. 401, Ann. Cas. 1913B, 538, 120 Pac. 483, 484, it was said: "The general rule is that a public officer is entitled to the compensation attached to the office, though he is not in active service, being unable to perform service because he has wrongfully been excluded or ousted from it. [Citing cases.] A police officer comes within this rule."

In *State ex rel. Bennetts* v. *Duncan,* 47 Mont. 447, 133 Pac. 109, it was held that a policeman was an officer within the meaning of a statute requiring all officers to take the constitutional oath of office. And it has been held that a police captain is an officer within the meaning of sections 447 and 10827, Revised Codes of 1921. (*State ex rel. O'Brien* v. *Mayor of Butte,* 54 Mont. 533, 172 Pac. 134.)

The term of office of a policeman is "during good behavior, unless suspended or discharged as provided by law." (Sec. 2, Chap. 119, Laws of 1923.) Tenure of office "during good behavior" is for a fixed term. (*Shira* v. *State ex rel. Ham,* 187 Ind. 441, 119 N. E. 833.) And while the term of a policeman was not fixed until in 1907, which was after the passage of section 511, still section 511 applies not only to persons, things and conditions existing at the time of its passage, but also to such as come into existence thereafter and which fall within its terms. (36 Cyc. 1235; 25 R. C. L. 778.) It follows that relator, as a policeman, was the incumbent of an office within the meaning of section 511. The almost universal rule announced by the authorities generally is that a policeman is a public officer. (See note in Ann. Cas. 1917B, 663; McQuillin on Municipal Corporations, 2d ed., secs. 203 and 2577.)

If, then, relator was convicted of a felony, it operated as an automatic limitation upon the duration of his office. (*In re Obergfell,* 239 N. Y. 48, 145 N. E. 323; Id., 239 N. Y. 589, 147 N. E. 207; *People ex rel. Fleming* v. *Shorb,* 100 Cal. 537, 38 Am. St. Rep. 310, 35 Pac. 163.)

Was relator convicted of a felony? The statutory offense for which he was convicted is found in section 88, 18 U. S. C. A., which reads: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both." One who commits the crime denounced by section 88 is guilty of a felony, for "all offenses which may be punished by death or imprisonment for a term exceeding one year, shall be deemed felonies." (Sec. 541, 18 U. S. C. A.) All felonies are infamous crimes. (*Falconi* v. *United States,* (C. C. A.) 280 Fed. 766.) And the test to be applied in determining whether a crime is infamous under the fifth amendment to the Constitution of the United States is the punishment that may be inflicted, and not what was actually imposed. (*Mackin* v. *United States,* 117 U. S. 348, 29 L. Ed. 909, 6 Sup. Ct. Rep. 777; *Brede* v. *Powers,* 263 U. S. 4, 68 L. Ed. 132, 44 Sup. Ct. Rep. 8; *In re Claasen,* 140 U. S. 200, 35 L. Ed. 409, 11 Sup. Ct. Rep. 735; *United States* v. *Moreland,* 258 U. S. 433, 66 L. Ed. 700, 24 A. L. R. 992, 42 Sup. Ct. Rep. 368; note in 8 Ann. Cas. 821; 16 C. J. 60, note 7; *Seitz* v. *Ohio State Medical Board,* 24 Ohio App. 154, 157 N. E. 304.) And that is the test to be applied in determining whether a person has been convicted of a felony or a misdemeanor when he has violated a federal statute on conspiracy. (*State ex rel. Beckman* v. *Bowman,* 38 Ohio App. 237, 175 N. E. 891.)

A different rule is prescribed by our statute which classifies crimes after judgment as felonies or misdemeanors by the punishment actually imposed. (Sec. 10723, Rev. Codes 1921;

*State* v. *Atlas,* 75 Mont. 547, 244 Pac. 477.) But that statute has to do only with crimes under our state statutes, and has nothing to do with crimes classified by the federal statutes. The character of an offense, i. e., whether a felony or a misdemeanor, must be determined by the laws of the jurisdiction where the crime was committed. (*State ex rel. Beckman* v. *Bowman,* supra.)

The crime for which relator stands convicted is a felony in the jurisdiction where committed, and we cannot regard it otherwise. Under the plain provisions of section 511 the office of relator became vacant upon his conviction, unless, as relator contends, section 511 has to do only with felonies or other crimes under our state laws, and does not cover felonies under the federal laws.

This same contention was advanced in the case of *In re Peters,* 73 Mont. 284, 235 Pac. 772, 774, which was a disbarment proceeding under a statute very similar to section 511, and it was there held that the state statute, section 8961, authorizing the suspension of an attorney upon "conviction of a felony or misdemeanor involving moral turpitude," required the suspension of an attorney when the conviction was in the federal court. That case is determinative of the question against the contention of the relator.

While there is some conflict in the authorities, the overwhelming weight of authority sustains this view. Among some of the many cases are the following: *In re Finch,* 156 Wash. 609, 287 Pac. 677; *In re O'Connell,* 184 Cal. 584, 194 Pac. 1010; *In re Shepard,* 35 Cal. App. 492, 170 Pac. 442; *In re Hodgskin,* 193 App. Div. 217, 183 N. Y. Supp. 401; *In re Lindheim,* 195 App. Div. 827, 187 N. Y. Supp. 211; *In re Elliott,* 122 Okl. 180, 253 Pac. 103; *In re Kerl,* 32 Idaho, 755, 8 A. L. R. 1259, 188 Pac. 40; *In re Kirby,* 10 S. D. 32, 414, 39 L. R. A. 856, 859, 73 N. W. 92, 907; *Seitz* v. *Ohio State Medical Board,* supra; *Barnes* v. *District Court,* 178 Cal. 500, 173 Pac. 1100; *State ex rel. Beckman* v. *Bowman,* supra.

The reason for the enactment of section 511 was the underlying principle that the security of our government depends

upon respect for laws and the confidence of the people in our public officers. The legislature has declared, in effect, that that confidence cannot extend to an officer convicted of a felony. (*State ex rel. Blake* v. *Levi*, 109 W. Va. 277, 153 S. E. 587.) Nor can the people generally have the proper respect for laws if their officers treat the laws with indifference. The reason for the rule declared by section 511 applies equally to one convicted under the federal law and under the state law.

Circumstances tending to mitigate the offense have been called to our attention. The Honorable George M. Bourquin, Judge of the United States district court, in sentencing relator, stated: "In a way you men are unfortunate. You are more or less the victims of a system of police that has grown up and perhaps been in vogue more or less the country over, not alone in this country, but in other countries, and not for a few years but for hundreds of years. * * * I am inclined to think from what has been said that none of you thought or realized there really was a violation of the laws of the United States, but being a part of the system you were victimized more or less by the system and you more or less inadvertently violated the law but without any real knowledge that you were violating it. The statements of all the officers who have been connected with this case incline me to believe that that is true." These palliatory circumstances were proper matters to be, and evidently were, considered in fixing the punishment to be inflicted, but cannot be availed of by us in an attempt to avoid the grade of the offense for which relator stands convicted. Nor can we, as contended by relator, reach a different result on the supposition that had he appealed from the judgment of conviction to the Circuit Court of Appeals it might have been set aside as controlled by the case of *Rossi* v. *United States*, (C. C. A.) 49 Fed. (2d) 1. No appeal having been prosecuted to that court and the judgment not having been reversed or set aside, we are bound by it.

Other interesting questions presented in the briefs of counsel require no consideration. It may be said in passing

that the proceedings before the police commission, under the circumstances, were idle and useless. In any event, the only function that the police commission could have performed was to find, as it did, that relator was found guilty of the crime charged against him (Chap. 119, Laws of 1923), and then to declare a vacancy in the office. It had no authority to do otherwise. (Compare *Brownell* v. *Russell*, 76 Vt. 326, 57 Atl. 103.) The action of the mayor in permanently discharging relator was also unnecessary to his effective removal. By force of the statute, his office became vacant upon his conviction of the felony. The court properly sustained the motion to quash and as properly dismissed the proceedings.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.