No. 12701

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

PERRY S. MELTON,

Plaintiff and Respondent,

-vs-

H. JAMES OLESON, Flathead County Attorney,
MERLYN TABORSKY, Flathead County Clerk and
Recorder, and BOARD OF TRUSTEES OF FLATHEAD
VALLEY COMMUNITY COLLEGE,

Defendants and Appellants.

---

Appeal from:  District Court of the Eleventh Judicial District,
Hon. Robert C. Sykes, Judge presiding.

Counsel of Record:

For Appellants:

H. James Oleson, County Attorney, argued, Kalispell,
Montana
M. Dean Jellison, Deputy County Attorney, argued,
Kalispell, Montana

For Respondent:

White, Vadala, Springer and Astle, Kalispell, Montana
David L. Astle argued, Kalispell, Montana
Patrick M. Springer appeared, Kalispell, Montana

---

Submitted: September 12, 1974

Decided: DEC 2 0 1974

Filed: DEC 2 0 1974

*Thomas J. Kearney*
                                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendants appeal from a judgment of the district court, Flathead County, ordering plaintiff's registration as a voter, voiding plaintiff's removal as a college trustee, and awarding plaintiff $4,500 attorney fees.

Plaintiff is Perry S. Melton, a voter residing in Flathead County, Montana, and a trustee of Flathead Valley Community College. Defendants are the Flathead county attorney, the county clerk and recorder and the board of trustees of the college. The county attorney was subsequently dismissed as a party defendant.

The material facts are undisputed. In 1933, in the United States district court in Montana, Melton plead guilty to three violations of federal liquor laws. Counts one and two of the indictment involved the sale of liquor to Indians; Count three involved concealing liquor with intent to defraud the federal government of taxes due thereon.

Melton was sentenced to 40 days in jail on counts one and two and fined $500 on count three. The fine was suspended and Melton was placed on probation for five years. After 40 years it is impossible to explain these sentences. The 40 day sentence was 20 days less than the minimum sentence set by statute. The penalty for the sale of liquor to any Indian was, at the time of the crime, a minimum sentence of 60 days in jail or a $100 fine, or both, with a maximum of not more than 2 years imprisonment and a fine of not more than $300 for each offense. We can find no authorization in the federal law, at the time, authorizing probation for a period of 5 years, some 3 years over the maximum sentence.

Forty years later the Flathead county attorney's office filed a certified copy of the 1933 conviction with the county clerk and recorder. It was accompanied by an opinion that Melton had thus been convicted of a felony. The clerk and recorder thereupon struck Melton's name from the voting rolls.

The county attorney's office then advised the board of trustees of Flathead Valley Community College that Melton was no longer a registered voter and that his position as college trustee should therefore be declared vacant. The board subsequently so declared.

In the meantime Melton had filed suit in the district court of Flathead County seeking restoration of his voting rights and to prevent his removal as college trustee. This action became entangled in a procedural morass that defies description. In our view these procedural complexities are not germane to our decision and may be disregarded except as hereafter discussed in connection with attorney fees.

The end result of the district court proceedings was a judgment, (1) ordering the clerk and recorder to register Melton as a voter, (2) declaring null and void the action of the college board of trustees declaring Melton's seat vacant, and (3) ordering Flathead County to pay Melton's $4,500 attorney fees. All defendants appeal from this judgment.

The controlling issues on appeal can be condensed to three:

(1) Was Melton convicted of a felony within the meaning of Montana's voter qualification laws?

(2) Were permissible legal remedies utilized here?

(3) Was the award of attorney fees correct?

The first issue is the principal substantive issue in this case. Melton's voting rights and his eligibility as college trustee turn on this issue. The difficulty arises because of contrary definitions of a felony under federal and state law.

At all material times, federal law has defined a felony as "Any offense punishable by death or imprisonment for a term exceeding one year * * *." See 18 U.S.C.A., Sec. 1 and its predecessors. Under federal law the possible punishment that may be imposed determines whether a given crime is a felony or a misdemeanor without regard to the sentence actually imposed. Ex parte Margrave, 275 F. 200.

At the time of Melton's conviction, the crime of selling liquor to Indians was punishable by a maximum imprisonment of two years and a fine of not more than $300 for each offense. Act of March

15, 1864, Ch. 33, 13 Stat. 29. The minimum sentence could have been a sentence of 60 days in jail or a fine of $100 or both. 29 Stat. 506. This offense is clearly a felony by federal definition despite the 40 day sentence actually imposed on Melton for both violations.

A different definition of a felony is prescribed by Montana law. At the time of Melton's conviction Montana's statute, Section 10723, R.C.M. 1921, declared:

"A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime is a misdemeanor."

The same statute further provided:

"When a crime, punishable by imprisonment in the state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court or jury, it is a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison."

Thus in Montana, the sentence actually imposed after conviction determines whether the defendant has been convicted of a felony. State v. Atlas, 75 Mont. 547, 244 P. 477. This same definition and classification of crimes has been preserved in Montana's new Criminal Code of 1973. Section 94-2-101(15) and (31), R.C.M. 1947.

We recognize that Montana's statutory definition of a felony relates only to crimes under state law and does not apply to crimes classified by federal statutes. State ex rel. Anderson v. Fousek, 91 Mont. 448, 8 P.2d 791. Nonetheless a fundamental difference of approach is apparent in this state's classification of crimes and the difference of approach between felonies and misdemeanors.

The crux of the problem here is whether state or federal law determines the definition of a felony mandating cancellation of voter registration. At the time of cancellation of Melton's voter registration state law, section 23-3014, R.C.M. 1947, provided in material part:

"(1) The registrar [county clerk and recorder] shall cancel any [voter] registration card:

"* * * (e) If a certified copy of a final judgment of conviction of any elector of a felony is filed * * *." (Bracketed words added.)

- 4 -

In construing section 23-3014, R.C.M. 1947, is Montana bound by the federal felony definition at odds with our own law? In 1932 this Court so held in construing a state statute relating to forfeiture of a public office. State ex rel. Anderson v. Fousek, 91 Mont. 448, 455, 8 P.2d 791.

In Fousek a city police lieutenant was convicted in federal court of conspiracy to violate federal liquor laws and sentenced to pay a fine of $100. The crime involved carried a maximum punishment of a $10,000 fine and two years imprisonment. This Court held:

> "* * *The character of an offense, i.e., whether a a felony or a misdemeanor, must be determined by the laws of the jurisdiction where the crime was committed."

As federal law classified the offense as a felony because the maximum punishment exceeded one year, the police lieutenant's position was declared vacant because of "His conviction of a felony" within the meaning of section 511, R.C.M. 1921.

Several weaknesses are apparent in this holding and the statutory construction supporting it. It is the responsibility of the Montana legislature to establish qualifications for holding public office (as in Fousek) and voting qualifications (as in the instant case). On what basis are we to imply that they delegated this responsibility to another legislative body, be it Congress or the legislature of another state, absent explicit statutory language to that effect? Yet that would be the result of the holding in Fousek--that Montana is bound by foreign classifications of crimes.

Glaring injustices would result in many cases. For example, by federal definition the following federal offenses are felonies: Using profanity in a "ham" radio transmission, 18 U.S.C.A. § 1464; purchasing a field jacket from a member of the Armed Forces, 18 U.S.C.A. § 1024; attempting to mail a letter using a stamp which has already been cancelled if committed by a postal employee, 18 U.S.C.A. § 1720. Did our Montana legislature intend to deny its citizens the right to vote for offenses like these?

In the instant case none of the three violations of which Melton was convicted would constitute a felony under our statutory definition and classification of crime. The more recent and persuasive authorities from our sister states hold that persons violating federal liquor laws are not disqualified from voting or holding public office where, as here, the offenses would not be felonies under state law. See Elder v. County Election Board, (Okla. 1958), 326 P.2d 776; Yocham v. Horn, 201 Okla. 647, 207 P. 2d 919; State ex rel. Arpagaus v. Todd, 225 Minn. 91, 29 N.W.2d 810.

We hold that in construing state statutes relating to voter disqualification, a Montana voter cannot be denied the right to vote because of conviction of an offense in federal court that would not be a felony by Montana statutory definition. We expressly overrule the holding in Fousek that "The character of an offense, i.e. whether a felony or misdemeanor, must be determined by the laws of the jurisdiction where the crime was committed."

Therefore, Melton was not disqualified from voting rights; and his position as college trustee was not vacant.

Defendants in their second issue contend that the wrong remedies were pursued by Melton in seeking restoration of his voting rights and in seeking to prevent his removal as college trustee.

Melton sought a writ of mandate to compel the county clerk and recorder to reinstate his voting registration. The judgment of the district court did not grant such writ of mandate, but simply ordered the clerk and recorder to "register Melton as a voter and Flathead County elector". The district court apparently considered this equivalent to a writ of mandate as it subsequently held a hearing and awarded attorney fees as damages.

A writ of mandate is a permissible remedy "to compel the performance of an act which the law specifically enjoins as a duty resulting from an office". It also is available "to compel the admission of a party to the use and enjoyment of a right * * * to which he is entitled and from which he is unlawfully precluded." Section 93-9102, R.C.M. 1947.

- 6 -

The difficulty here is that there was no clear legal right in Melton to restoration of his voting rights and no clear legal duty on the part of the clerk and recorder to reinstate him as a voter. Fousek was the law of Montana at the time of the events from which Melton sought relief. Under Fousek federal law and not state law determined whether Melton had been convicted of a felony, and under federal law at least two of the offenses of which he was convicted were clearly felonies. It is only by reason of our decision herein specifically overruling the Fousek rule that Melton is entitled to prevail.

Nor does a writ of mandate lie to correct or undo action already taken. State ex rel. Thompson v. Babcock, 147 Mont. 46, 409 P.2d 808. The county clerk and recorder had already determined that a certified copy of a final judgment of Melton's conviction of a felony had been filed with her, which required her to cancel his voting registration. She thereupon cancelled it. Her acts preceded the filing of Melton's suit.

We hold that a writ of mandate is not a permissible remedy. But for every right there is a remedy. Section 49-115, R.C.M. 1947. Melton's action is clearly a suit for equitable relief and adjudication of his rights which he is clearly entitled to institute and prosecute.

It is unnecessary to discuss the availability of a writ of review to test the validity of the action of the board of trustees of the college in declaring Melton's seat vacant. The issue has become moot by Melton's subsequent election to the board, and there is no issue concerning attorney fees on a writ of review.

The third issue of defendants is the legality of the award of $4,500 attorney fees. The only basis for such award is the statutory authorization to include such award in judgments granting writs of mandate. Section 93-9112, R.C.M. 1947, and cases cited thereunder. Having found that a writ of mandate is not a permissible remedy here, the award of attorney fees is vacated and set aside.

In summary, we hold that: Melton was not convicted of a felony within the meaning of Montana's voter disqualification law; Melton is entitled to be registered as a voter and elector of Flathead County, Montana; the award of attorney fees against Flathead County is vacated and set aside; and, costs are awarded to plaintiff in the district court and upon appeal.

We remand the case to the district court of Flathead County for entry of judgment accordingly.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 8 -

Chief Justice James T. Harrison concurring in part and dissenting in part:

I concur in the holding that Melton is now entitled to be registered as a voter and elector, and the vacating and setting aside of the attorney fee award.

I dissent to the holding that Melton was not convicted of a felony, and the overruling of State ex rel. Anderson v. Fousek, 91 Mont. 448, 455, 8 P.2d 791.

-------------------------------
Chief Justice