Ron MILLS, Appellant
(Counter Defendant),

William Fitch and Perry Study
(Counter Defendants),

v.

CAMPBELL COUNTY CANVASSING BOARD comprised of Vivian Addison, County Clerk in and for Campbell County, Daryl Olds and Majorie Rainwater, Appellee (Defendant and Counter Plaintiff),

v.

Bill L. BARKLEY (Plaintiff and Counter Defendant).

No. 84–302.

Supreme Court of Wyoming.

Oct. 18, 1985.

James L. Edwards of Sheehan, Stevens & Sansonetti, Gillette, for appellant (counter defendant).

Martell Hilderbrand, Gillette, and Jack Vreeland (argued), Deputy County Atty. Campbell County, for appellee (defendant and counter plaintiff).

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

In this appeal we are asked to determine whether appellant was disenfranchised for the 1984 election in Wyoming as a result of his felony check fraud convictions in Kansas. Appellant challenges the district court's order directing that a special primary election be held on October 2, 1984, to determine a Republican nominee for Campbell County commissioner. The basis for the district court's action was the appearance of appellant's name on the ballot for the primary election held September 11, 1984, even though he was a convicted felon in the state of Kansas. Appellee contests this court's jurisdiction and asserts that the case is now moot.

We affirm but order a modification.

In January 1977 appellant pled guilty in a Kansas district court to two counts of felony check fraud, a violation of § 21–3707, Kan.Stat.Ann. (1969). The dollar amounts involved on the two counts were $221.32 and $231.75. Following his guilty plea, appellant was sentenced and placed on probation for a period of two years. Because appellant was not incarcerated, he was not disenfranchised in the state of Kansas. See, § 21–4603(5), Kan.Stat.Ann. (Cum.Supp.1984).

According to appellant's brief, he was released from probation on January 21, 1979. Prior to that date he had moved to Campbell County, Wyoming, where he cur-

rently resides. The parties stipulated below that appellant has never received a pardon from the governor of Kansas, nor has he received a certificate of restoration of rights from the governor of Wyoming.

On September 11, 1984, a primary election was held to determine the Republican nominee for Campbell County commissioner. Appellant was listed on the ballot as a candidate for that office. He received 338 votes and finished fourth in a field of four candidates. The top two candidates finished within 69 votes of each other. Had appellant not been on the ballot, the 338 votes he received would, in all probability have gone to the other candidates. With just 69 votes separating the top two candidates, these votes could have affected the outcome of the election. Therefore, on September 18, 1984, the Campbell County Canvassing Board for the Primary Election (hereinafter Board) declared "the County Commissioners race on the Republican ticket null and void due to one of the candidates being an unqualified elector." The Board then called a special election to be held on October 2, 1984.

Following the calling of the special election by the Board, Bill Barkley, the candidate who had received the largest number of votes, filed a Notice of Contest in the Campbell County District Court. Mr. Barkley sought to have the election results declared valid and to stop the scheduled special election.

The Board, in its answer and counter petition to Mr. Barkley's lawsuit, asserted that the other three primary candidates, including appellant, were necessary parties, should be joined as such, and that the court should enter a declaratory judgment finding that the Board had acted properly in declaring the primary election of a Republican nominee for county commissioner void.

A hearing was held on September 29, 1984. At that time the district court indicated that it believed the primary election must be declared a nullity because of the presence of appellant's name on the ballot. On October 1, 1984, the court issued a writ of mandamus directing the Campbell Coun-

ty clerk to hold the special primary election October 2, 1984.

On October 11, 1984, appellant filed a motion to amend the writ of mandamus pursuant to Rule 59(e), W.R.C.P. This motion was denied on October 23, 1984. Subsequently, on November 2, 1984, appellant filed his notice of appeal.

The first issue we address is appellee's contention that we are without jurisdiction to hear this appeal. Appellee maintains that the notice of appeal, filed November 2, was not timely because it was filed more than fifteen days after the issuance of the writ of mandamus.

■ Appellee's position is not well taken. Appellant's motion to amend pursuant to Rule 59, W.R.C.P. tolled the time for filing the notice of appeal. The district court had sixty days to act on the motion once it was filed. Rule 59(f), W.R.C.P. The court denied the motion within the sixty-day period. Upon the district court's denial of the motion, appellant had fifteen days in which to file his notice of appeal. Rule 2.01, W.R.A.P.; *Sun Land & Cattle Co. v. Brown*, Wyo., 387 P.2d 1004 (1964). Appellant's notice of appeal was filed within fifteen days of the denial of his motion to amend and designated with sufficient specificity the October 1, 1984 Writ of Mandamus as the order appealed from. See Rules 2.01 and 2.02, W.R.A.P. This appeal is timely.

Appellee's second contention is that the case is now moot. This court has previously stated:

"It is settled beyond question in this jurisdiction that when no judgment rendered can be carried into effect the cause is moot and will not be considered." *Belondon v. State, ex rel. Leimback*, Wyo., 379 P.2d 828, 829 (1963).

Yet, the court noted in its opinion there that this rule could be relaxed when a question of great public importance was present.

■ Here we believe the issue is not moot. Though the election is over, the district court's ruling still affects appellant. The court's ruling was that appellant was

disenfranchised and thus ineligible to run for public office. Because the ruling continues to operate as to appellant, we will address the merits of this appeal.

Appellant claims it was error for the district court to conclude that the Kansas felony convictions cost him his ability to vote and run for political office in Wyoming. Appellant's analysis of the issue assumes that the case presents a conflicts-of-law question. He argues that since he did not lose his civil rights under Kansas law by virtue of the convictions, Wyoming has no interest in depriving him of those rights.

He also claims that Wyoming would treat appellant's convictions as misdemeanors if they had occurred here. The crimes with which appellant was charged in Kansas occurred in 1977; and the statutes in effect at that time control. In 1977, § 6–39, W.S. 1957 (recodified and renumbered as § 6–3–110, W.S.1977), provided that it was a high misdemeanor (maximum penalty being one year in the county jail and a $1,000 fine) to issue a fraudulent check in a dollar amount of fifty dollars or more. Arguably appellant might have been charged with a felony under § 6–17, W.S. 1957 (recodified and renumbered as § 6–2–101, W.S. 1977), which provided:

"Every person who shall falsely make, alter, forge or counterfeit any * * * check or draft * * * with intent to prejudice, damage or defraud any person * * shall be deemed guilty of forgery, and upon conviction thereof shall be punished by confinement in the penitentiary for a term not more than fourteen (14) years."

We need not decide that question here, for he was not charged with anything in Wyoming. He was charged with check fraud in Kansas and the crimes charged were felonies under the statute charged. It would be administratively impossible for Wyoming to review the facts of each alleged offense in a foreign state to determine what crime would or might be charged in Wyoming and then determine in each individual case the effect under Wyoming law. The legislature did not contemplate nor provide for such procedure in its legislative enactments, and we cannot find it was intended.

■ Contrary to appellant's arguments, we believe the proper analysis to use in this case is one of statutory construction. The statute, § 22–1–102(k), infra, is operative as to one convicted of a felony. Appellant was convicted of a felony in this area of law, and it is undisputed that where the language of a statute is plain and unambiguous, there is no need to go further. "The plain, ordinary and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary." *Board of County Comm'rs of Campbell County v. Ridenour*, Wyo., 623 P.2d 1174, 1184 (1981).

Here, § 22–1–102(k), W.S. 1977, Cum. Supp.1984, provides:

"The term 'qualified elector' includes every citizen of the United States who is a bona fide resident of Wyoming, has registered to vote and will be at least eighteen (18) years of age on the day of the election at which he may offer to vote. No person is a qualified elector who is a mentally incompetent person, or who has been convicted of a felony and his civil rights have not been restored. A literacy test shall not be imposed as a condition to voting in any election."

Section 18–3–501, W.S. 1977, Cum.Supp. 1984, provides in pertinent part: "Each board of county commissioners shall consist of three (3) qualified electors who shall be elected * * *." These provisions have remained unchanged in their pertinent language since before 1977.

Appellant seeks to find ambiguity by relying on § 7–13–107, W.S.1977, which, before its 1981 amendment, provided as follows:

"The governor of the state of Wyoming shall, upon receiving a statement of good conduct of a convict, whose term is aobut to expire, from the warden of the state penitentiary, immediately issue a certificate for the discharge of such convict; such certificate shall in all cases restore the said convict his rights the same as

though full pardon had been granted. The said certificate to be delivered to the convict by the warden of the state penitentiary at the expiration of his term."

The amended version of this section reads:

"(a) Upon receipt of a written application, the governor may issue to a person convicted of a felony under the laws of a state or the United States a certificate which restores the rights lost pursuant to W.S. 6–1–104 [§ 6–10–106] when:

"(i) His term of sentence expires; or

"(ii) He satisfactorily completes a probation period." § 7–13–107, W.S.1977, Cum.Supp. 1984.

■ Appellant argues that prior to the 1981 amendment a probationer could not be deprived of his civil rights because there were no means specifically provided for restoring them. Accordingly, appellant contends that since he was a felon who was placed upon probation, he never lost his civil rights in Wyoming.

We cannot agree. Section 22–1–102(k), W.S. 1977, Cum.Supp. 1984, is clear on its face. Appellant, as a convicted felon who had not had his rights restored, was not a qualified elector. The failure of § 7–13–107, W.S.1977, to set out a means of obtaining restoration of rights for a successful probationer does not constitute a clear statutory provision which would compel us to look beyond the obvious meaning of § 22–1–102(k). Wyoming has a legitimate interest in setting certain base qualifications for its electors and candidates for public office. The legislature has seen fit to disenfranchise those who violate the laws of the society in which they live and, as a result, are convicted of a felony. The fact that the state of Kansas has set different standards does not alter Wyoming law. The Wyoming legislature is not free to overrule the Kansas legislature as to matters concerning the state of Kansas. So, too, the Kansas legislature cannot override the Wyoming legislature's decision to disenfranchise those convicted of a felony unless they receive a restoration of their rights from the governor of Wyoming.

A felony conviction carries with it a judicial determination that the individual who is convicted has chosen not to abide by the laws of society. It is reasonable for our legislature to rule that convicted felons are unfit to vote or hold public office until they have convinced the governor of this state otherwise. Accordingly, we conclude that the district court correctly ruled that appellant was unqualified to run for county commissioner.

■ However, we do believe that the district court erred in issuing a writ of mandamus. Section 1–30–104, W.S.1977, provides that a writ of mandamus "must not be issued when there is an adequate remedy at law." Section 22–17–108, W.S. 1977, provides that where a petition contesting an election has been filed and answered the court "shall confirm or annul the election" in its judgment. The court here should have issued a judgment annulling the September primary election; under Wyoming law such a judgment was the appropriate remedy. Accordingly, the writ of mandamus is vacated, and the district court is ordered on remand to enter a judgment annulling the September 11, 1984 primary election of a Republican nominee for county commissioner.

THOMAS, Chief Justice, specially concurring.

I understand that the trial court made a very careful effort to not decide the question of Mr. Mills' right to vote, and did its best to limit the issue to the question of his right to hold public office. Under those circumstances I would say that the case is moot because the general election has been held. *State ex rel. Willis v. Larson*, Wyo., 539 P.2d 352 (1975). I do not believe that we should treat with the undecided question of the appellant's right to vote on the ground that it is a question of great public importance. I do not have any difference with the conclusion of substantive law which is reached by the majority opinion on that score, but I believe that the concepts of judicial restraint indicate that the point should not be addressed or decided.

ROSE, Justice, dissenting.

By constitutional and statutory provisions, Wyoming denies the election franchise to any person convicted of an infamous crime or felony unless his civil rights have been restored. Article 6, § 6 of the state Constitution provides:

"All idiots, insane persons, and persons convicted of infamous crimes, unless restored to civil rights, are excluded from the elective franchise."

Section 6–10–106, W.S.1977, reads:

"(a) A person convicted of a felony is incompetent to be an elector or juror or to hold any office of honor, trust or profit within this state, unless:

"(i) His conviction is reversed or annulled;

"(ii) He receives a pardon; or

"(iii) His rights are restored pursuant to W.S. 7–13–107."

Section 22–1–102(k), W.S.1977, provides in part:

"* * * No person is a qualified elector who is a mentally incompetent person, or who has been convicted of a felony and his civil rights have not been restored."

The controlling question in this appeal is whether this court, in construing Wyoming's voter qualification laws, is bound by Kansas' classification of an offense as a felony, when the same conduct amounts to a misdemeanor under Wyoming law. The majority answer this question in the affirmative. In my opinion, however, the legislature of this state is the appropriate body to define those acts which constitute a crime so serious as to result in the denial of the perpetrator's fundamental rights to vote and to seek elective office. The policies of a foreign state may diverge from the interests and concerns of this state and, therefore, should not determine Wyoming's acceptable code of conduct for qualified electors.

In interpreting the election laws quoted above, we are bound by the principle that the right to vote and the right to seek election to public office are fundamental rights entitled to the strict protection of the courts. *Brimmer v. Thomson*, Wyo., 521 P.2d 574 (1974); *Rasmussen v. Baker*, 7 Wyo. 117, 50 P. 819, 38 L.R.A. 773 (1897). We said in the early case of *Rasmussen v. Baker*, supra, 50 P. at 822:

"* * * [A]ny provision which excludes any class of citizens from the exercise of the elective franchise ought to receive a strict construction, without, however, doing violence to or distorting the language, to the end that *none shall be held excluded who are not clearly designated.*" (Emphasis added.)

Courts in other jurisdictions have held that voter qualification laws substantially similar to ours do not disenfranchise a person convicted of an offense in another jurisdiction, unless that offense would be a felony in the voting jurisdiction. *Gutterman v. State*, Fla.App., 141 So.2d 21 (1962); *State ex rel. Arpagaus v. Todd*, 225 Minn. 91, 29 N.W.2d 810, 175 A.L.R. 776 (1947); *Melton v. Oleson*, 165 Mont. 424, 530 P.2d 466 (1974); *Yocham v. Horn*, 201 Okl. 647, 207 P.2d 919 (1948). The Montana Supreme Court in *Melton v. Oleson*, supra,[1] overruled its prior decision denying public office to a convicted felon whose crime constituted a misdemeanor under Montana law. The Melton court set out its earlier holding and discussed the flaws in that position:

"* * * This Court held [in *State ex rel. Anderson v. Fousek*, 91 Mont. 448, 455, 8 P.2d 791 (1932)]:

"'* * * The character of an offense, i.e., whether a felony or a misdemeanor, must be determined by the laws of the jurisdiction where the crime was committed.'

"*       *       *       *       *       *

"'* * * (e) If a certified copy of a final judgment of conviction of any elector of a felony is filed * * *.' (Bracketed words added.)" 530 P.2d at 469.

---

1. Section 23–3014, R.C.M.1947, at issue in *Melton v. Oleson*, provided in part:

"'(1) The registrar [county clerk and recorder] shall cancel any [voter] registration card:

"Several weaknesses are apparent in this holding and the statutory construction supporting it. It is the responsibility of the Montana legislature to establish qualifications for holding public office (as in *Fousek*) and voting qualifications (as in the instant case). On what basis are we to imply that they delegated this responsibility to another legislative body, be it Congress or the legislature of another state, absent explicit statutory language to that effect? Yet that would be the result of the holding in Fousek—that Montana is bound by foreign classifications of crimes.

"Glaring injustices would result in many cases. For example, by federal definition the following federal offenses are felonies: Using profanity in a 'ham' radio transmission, 18 U.S.C.A. § 1464; purchasing a field jacket from a member of the Armed Forces, 18 U.S.C.A. § 1024; attempting to mail a letter using a stamp which has already been cancelled if committed by a postal employee, 18 U.S.C.A. § 1720. Did our Montana legislature intend to deny its citizens the right to vote for offenses like these?

"In the instant case none of the three violations of which Melton was convicted would constitute a felony under our statutory definition and classification of crime. The more recent and persuasive authorities from our sister states hold that persons violating federal liquor laws are not disqualified from voting or holding public office where, as here, the offenses would not be felonies under state law. See *Elder v. County Election Board,* (Okl.1958), 326 P.2d 776; *Yocham v. Horn,* 201 Okl. 647, 207 P.2d 919; *State ex rel. Arpagaus v. Todd,* 225 Minn. 91, 29 N.W.2d 810." 530 P.2d at 469–470.

I find this reasoning compelling. The policies of Wyoming in denying the vote to convicted felons would hardly be advanced by ignoring the nature of the offense under Wyoming law and mechanically accepting the classification deemed appropriate in Kansas.

Appellant pled guilty in a Kansas district court to issuing worthless checks in the amount of $221.32 and $231.75, in violation of § 21–3707, K.S.A.[2] The Wyoming legislature has determined that such conduct constitutes a misdemeanor in this state. Section 6–39(a), W.S.1957, 1975 Cum.Supp. (now § 6–3–110, W.S.1977, 1985 Cum. Supp.).[3] Therefore, our election laws which disenfranchise those persons convicted of felonies do not prohibit appellant from voting and seeking public office. I would have reversed the ruling of the district court.

2. Section 21–3707(1) and (4), K.S.A., provided at the time pertinent here:

"(1) Giving a worthless check is the making, drawing, issuing or delivering or causing or directing the making, drawing, issuing or delivering of any check, order or draft on any bank or depository for the payment of money or its equivalent with intent to defraud and knowing, at the time of the making, drawing, issuing or delivering of such check, order or draft as aforesaid, that the maker or drawer has no deposit in or credits with such bank or depository or has not sufficient funds in, or credits with, such bank or depository for the payment of such check, order or draft in full upon its presentation.
* * * * * *
"(4) Giving a worthless check is a class E felony if the check, draft or order is drawn for fifty dollars ($50) or more. Giving a worthless check is a class A misdemeanor if the check, draft or order is drawn for less than fifty dollars ($50)."

3. Section 6–39(a), W.S.1957, 1975 Cum.Supp. (now § 6–3–702, W.S.1977, 1985 Cum.Supp.), provided:

"(a) Whoever, with intent to defraud by obtaining money, merchandise, property, credit, or other thing of value, although no express representation is made in reference thereto, or who, in the payment of any obligation, shall make, draw, utter or deliver any check, draft or order for the payment of money in the sum of $50 or upwards upon any bank, depository, person, firm or corporation, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in such bank, depository, person, firm or corporation for the payment of such check, draft or order in full upon its presentation, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned in the county jail for not more than one year or both."