No. 88-83

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

GARY S. MARBUT,

        Plaintiff/Relator,

   -vs-

SECRETARY OF STATE, JIM WALTERMIRE,

        Defendant/Respondent.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relator:

        Gary S. Marbut, pro se, Missoula, Montana

    For Respondent:

        Gregory L. Curtis, Legal Counsel, Secretary of State's
        Office, Helena, Montana
        Luxan & Murfitt; Walter S. Murfitt, Helena, Montana
        Hon. Mike Greely, Attorney General, Helena, Montana
        Joe Roberts, Asst. Atty. General, Helena

    Petitioners in Intervention:

        James Goetz, Bozeman, Montana

|  |  |
|---|---|
| Submitted: | March 10, 1988 |
| Decided: | March 11, 1988 |

Filed: MAR 1 1 1988

*Ethel M. Harrison*

Clerk

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 88-083

GARY S. MARBUT,　　　　　　　　　　)
　　　Plaintiff/Relator,　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)　　　OPINION AND
　　　　　　　　　　　　　　　　　　　)　　　ORDER OF
SECRETARY OF STATE,　　　　　　　　)　　　DISMISSAL
JIM WALTERMIRE,　　　　　　　　　　)
　　　Defendant/Respondent.　　　　)

On February 18, 1988, Gary S. Marbut, as relator filed in this Court his application to commence an original proceeding for declaratory judgment, writ of mandate, and other appropriate relief.

Before accepting jurisdiction, we issued an Order dated February 22, 1988, directing the Relator to serve a copy of his application and proposed complaint upon the Attorney General, and requiring the Attorney General to file in this Court a response to Relator's application and proposed complaint, including particularly whether the proposed complaint "presents a justiciable controversy for this Court to determine."

In our order of February 22, 1988, we stated the problem presented by the Relator's application and proposed complaint:

> On examination, the application and complaint appear to be in the nature of a "friendly suit." The application recites in paragraph 4 that the Secretary of State has advised local election officials that the ballot for the upcoming primary election to be held June 7, 1988 will include initiatives CI-27 and CI-30. In his proposed complaint and petition for declaratory judgment Mr. Marbut prays in paragraph 3 of the prayer that we issue an alternative writ of mandate requiring the Secretary of State to commence the administrative

process for inclusion of CI-27 and CI-30 in the next regular statewide election. The proposed complaint seeks the same relief it is alleged the Secretary of State is about to grant.

The Attorney General filed his written response in this Court on March 7, 1988. In it, he pointed out as basic the requirement that parties to the litigation be adverse, relying on Moore v. Charlotte-Mecklenburg Board of Education (1971), 402 U.S. 47, 47-48, 91 S.Ct. 1292, 1293, 28 L.Ed.2d 590, 591. He also pointed out that Montana cases support the requirement of adversarial parties in litigation, Chovanak v. Matthews (1948), 120 Mont. 520, 188 P.2d 582; Stewart v. Board of County Commissioners (1977), 175 Mont. 197, 573 P.2d 184. The Attorney General further stated that declaratory judgment actions still require justiciability, citing Chovanak, supra. The Attorney General concluded that justiciability is not an idle requirement, that the presence of adverse parties assures the Court that it will have the benefit of full debate on the issues, and that the requirement was of special importance for public issues of statewide impact, such as are raised by CI-27 and CI-30.

On March 7, 1988, the several parties known collectively as "Montanans for the Preservation of Citizens' Rights" (see State of Montana ex rel. Montana Citizens for Preservation of Citizens' Rights v. Waltermire (1987), 738 P.2d 1255, 44 St.Rep. 929A) filed a petition to intervene here for the limited purpose of seeking dismissal of the action brought by Relator together with Intervenor's proposed motion to dismiss, answer and response to the Relator's complaint, and memorandum in support.

On March 8, 1988, the Relator, Mr. Marbut, filed his brief in response to the application to intervene. In his response, Mr. Marbut contends the proposed Intervenors have

- 3 -

proceeded prematurely because the Court has not yet accepted jurisdiction; that Mr. Marbut would not move to join the Intervenors as an interested party in the action because he would not want to impose attorney fees on Intervenors; that if intervention were granted, no costs should be recoverable from Mr. Marbut in case of a decision adverse to him; and that in answer to the Intervenors, he cannot rely on the "good intentions" of Secretary of State Waltermire to place the initiatives on the ballot and therefore must have a writ of mandate from this Court directed to the Secretary of State.

Counsel for the Secretary of State (counsel has now been deputized by the Attorney General to appear for the Secretary of State) also filed a response on March 7, 1988. Counsel contends for the Secretary that there are genuine existing rights and interests involved, that a controversy exists upon which the Court may effectively operate, and that the judicial determination will have the effect of a final judgment of law; that a question of law exists as to whether the provisions of § 13-35-107, MCA, offend the State Constitution, Art. XIV, § 9; and that the declaratory judgment sought by relator limits his request to guidance in this particular circumstance.

It is clear that no justiciable controversy is presented by the application for a writ of mandate. In paragraph 9 of the Secretary's answer and response to Mr. Marbut's petition, the Secretary states that by letter dated February 5, 1988, he advised the election officials in each county in the State of Montana that he intended to submit the constitutional initiatives, CI-27 and CI-30, to the qualified electors at the next regular statewide election to be held on June 7, 1988 for acceptance or rejection. The response of the Attorney General here includes an excerpt from the Great

- 4 -

_Falls_ _Tribune_, Great Falls, Montana, dated February 5, 1988, which carries an Associated Press story that the Secretary of State had ordered a new election for the two ballot measures. An applicant for a writ of mandate must establish a clear legal right to the writ and a violation of duty by the person or persons sought to be coerced. Benson v. School District No. 1 of Silver Bow County (1959), 136 Mont. 77, 344 P.2d 117. The Secretary here is performing the duty for which Mr. Marbut contends. Moreover, a writ of mandate will not lie to correct or undo an action already taken. State ex rel. Thompson v. Babcock (1966), 147 Mont. 46, 409 P.2d 808; Melton v. Oleson (1974), 165 Mont. 424, 530 P.2d 466.

In like matter, there is here no justiciable controversy for a declaratory judgment. In Muskrat v. United States (1911), 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246, the United States Supreme Court had before it a case in which Congress had passed legislation, and had instructed in the legislation that actions be brought before the Court of Claims and before the United States Supreme Court to determine the validity of the legislation. The Supreme Court found no actual controversy before it saying:

> This attempt to obtain a judicial declaration of the validity of the act of Congress is not presented in a "case" or "controversy" to which, under the Constitution of the United States, the judicial power alone extends. It is true the United States is made a defendant in this action, but it has no interest adverse to the claimants. The object is not to assert a property right as against the government, or to demand compensation for alleged wrongs because of action upon its part. The whole purpose of the law is to determine the constitutional validity of this class of legislation in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the government in its sovereign capacity, and concerning which the only judgment required is

- 5 -

> to settle the doubtful character of the legislation in question. Such judgment will not conclude private parties, when actual litigation brings to the court the question of the constitutionality of such legislation . . .

219 U.S. at 361-362, 31 S.Ct. at 255-256, 55 L.Ed. at 252.

In Montana, the requirement of justiciable controversy likewise applies to declaratory judgment actions:

> It has been held and we approve of the following statement of the principles applicable under the Uniform Declaratory Judgment Act:
>
> "The courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, declare social status, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions. (Citing cases.) The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice." (Citing cases.)

Montana Department of Natural Resources v. Intake Water Company (1976), 171 Mont. 416, 440, 558 P.2d 1110, 1123; See Chovanak v. Matthews (1948), 120 Mont. at 525, 188 P.2d at 584.

The Relator contends that this Court has relaxed the requirement of adverse parties in such cases as Grossman v. State of Montana (Mont. 1984), 682 P.2d 1319, 41 St.Rep. 804 and 42nd Legislative Assembly v. Lennon (1971), 156 Mont. 416, 481 P.2d 330. In Grossman, however, we maintained that the issues had to be "vigorously contended" and fully explored. In Lennon, although the legislature directed the filing of the declaratory judgment through the Attorney General and the Secretary of State, the respondent, the Clerk and Recorder of Cascade County, Montana, vigorously contended both in oral argument and in brief, opposite positions to the

Attorney General and the Secretary of State on the legal questions presented. There were no factual disputes.

While many cases support the rights of taxpayers, citizens or electors to have standing to bring actions against public officials for legal determinations of their respective rights, we have found no case granting standing to a complainant or applicant who shows no injury or threatened injury to himself through the act of a public official.

We hold, therefore, because of a lack of justiciable controversy, this Court has no jurisdiction of the relator's application and proposed complaint.

The Secretary has now filed a motion that we grant Intervenor's petition for intervention and that we denominate Intervenor as a party defendant and real party in interest. The motion is not well taken. Its effect would make the Intervenor the respondent as against Mr. Marbut and expose Mr. Marbut to costs in the event of a decision adverse to him. The cause would then be reduced to an argument between Mr. Marbut and the Intervenor as to the validity of the Secretary's actions. The business of courts is to decide cases, not arguments. 6A Moore's Federal Practice, p. 57-160 (1984), Declaratory Judgments, § 57.15.

The lack of controversy is not cured by the appearance of the Intervenor. The Intervenor's appearance is for the limited purpose of securing a dismissal, and it is inconceivable that where the court has no jurisdiction of the principal cause, the appearance of an intervenor creates jurisdiction. Moreover, Mr. Marbut's response to the petition for intervention precludes granting the petition for intervention.

We hold that these proceedings must be dismissed and the application for intervention denied. We express no opinion whatsoever in this cause as to the validity of the actions

- 7 -

undertaken by the Secretary of State respecting CI-27 and CI-30, nor as to whether the "next regular state-wide election" (Art. XIV, § 9(2), 1972 Montana Constitution) is a primary or general election.

IT IS THEREFORE ORDERED:

1. The application for intervention herein is DENIED.

2. Relator's application for an original proceeding herein is DISMISSED.

3. Copies hereof to Relator and all counsel of record.

DATED this 11th day of March, 1988.

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice Fred J. Weber dissents as follows:

We are concerned here with the extent of the initiative rights of the citizens of Montana. In the 1972 Constitution, the people of Montana reserved all political power to themselves. Mont. Const. art. II, § 1 states:

> All political power is vested in and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.

By the same Constitution, the people of Montana reserved the right to amend the Constitution. Mont. Const. art. II, § 2 states:

> The people have the exclusive right of governing themselves . . . They may alter or abolish the constitution and form of government whenever they deem it necessary.

By a provision newly inserted in the 1972 Constitution, the people reserved the right to propose constitutional amendments by initiative, stating in Mont. Const. art. XIV, § 9:

> (1) The people may also propose constitutional amendments by initiative. Petitions including the full text of the proposed amendment shall be signed by at least ten percent of the qualified electors of the state. . . .
> (2) The petitions shall be filed with the secretary of state. If the petitions are found to have been signed by the required number of electors, the secretary of state shall cause the amendment to be published as provided by law twice each month for two months previous to the next regular state-wide election.
> (3) At that election, the proposed amendment shall be submitted to the qualified electors for approval or rejection. . . . (Emphasis supplied.)

9

These provisions emphasize the right of the people of Montana to amend the Constitution by initiative without going through any of the three branches of government. Our primary issue here is the extent of that right of initiative. Both CI-27 and CI-30 were certified by the Secretary of State to have the required number of signatures entitling the initiative to consideration at the "next regular state-wide election". A basic question is whether the people of Montana have a right to vote on these initiatives where the original votes have been found to be invalid because of the type of notice given by the office of the Secretary of State.

The majority opinion describes the application and proposed complaint filed by the plaintiff. It also describes the Secretary of State's response to which was attached a proposed answer on his part. Next the opinion describes the Attorney General's written response in which he concluded that justiciability is required in a declaratory judgment action and is not present in the current proceeding.

Reference is then made to the petition to intervene for the limited purpose of seeking dismissal of the action. The majority opinion points out that the petition to intervene was filed for the limited purpose of seeking dismissal of the action. I find it necessary to more carefully review the papers filed by these Petitioners in Intervention and the rules which apply in intervention. It is true that their petition does indicate that a request is made for an order granting them the status of intervening defendants limited at this time to the right to raise issues relating to the dismissal of the application and reserving the question of general participation. This is an interesting concept which is not provided for in our rules of procedure. The Petitioners in Intervention carefully set forth a description of the parties constituting that group, pointing out that the

10

"Montanans for the Preservation of Citizens' Rights" is an ad hoc group of individual Montana citizens, voters, and taxpayers formed to preserve and protect constitutional rights, that CI-30 "threatens to take away and impair these existing constitutional rights," and that "[i]ndividual group members are, therefore, individually directly adversely affected by the proposed measure." The next paragraph refers to the Montana State AFL-CIO and points out that their rights are threatened or jeopardized by the initiative measure. In a similar manner the Women's Law Caucus is described as a unique group whose members are individually and collectively adversely affected or threatened by CI-30. Next a number of individual persons are named whose rights of suit are stated to be adversely affected by CI-30. In summary, the petition states that all of these Petitioners in Intervention were plaintiffs/relators in the prior case before this Court and as such "they have a keen and ongoing interest in the disposition of the present matter." By the wording of this petition, the Intervenors have met the requirements of Rule 24(a), M.R.Civ.P. which grants a right to intervene as a matter of right when an applicant claims an interest relating to the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest. Further, the Petitioners in Intervention have followed the procedure required under Rule 24(c), M.R.Civ.P. which requires the presentation of a motion to intervene accompanied by a pleading setting forth their defense. Attached to their petition, the Intervenors have set forth an answer which responds to the complaint and petition on the part of plaintiff Marbut. This answer has been carefully drawn and demonstrates a real and significant controversy between the Petitioners in Intervention and Mr. Marbut.

11

In their petition for Intervention the petitioners state they "do not wish to supply the requisite adversity to the present collusive proceedings" and therefore ask that they be allowed to raise the issues relating to dismissal without being admitted as parties under the provisions of Rule 24. Petitioners in Intervention cite no authority for such an appearance under Rule 24. The parties seek a limited type of appearance while claiming the benefit of an intervention as a matter of right under Rule 24.

The Secretary of State has now filed a memorandum in which he points out that Rule 24, M.R.Civ.P. provides that a party who intervenes voluntarily is deemed to have appeared before the Court for all purposes. The Secretary of State requests that the motion to intervene by the Petitioners in Intervention be granted and that such petitioners be given "full party in interest" status. The Secretary of State does not cite any specific case authority for that position.

I conclude that the wording of Rule 24, M.R.Civ.P. clearly warrants the issuance of an order approving the intervention of right by the Petitioners in Intervention. I further am unable to find anything in the Rules which justifies a petition to intervene for the limited purpose of seeking dismissal. I conclude there is a reasonable basis to enter an order of intervention.

The essence of the majority opinion is that there is no justiciable controversy between plaintiff Marbut and the Secretary of State and that the petition therefore should be denied. I do not take issue with the general authority which is quoted in the majority opinion defining the nature of the justiciable controversy which is required in various types of actions, including declaratory judgment proceedings. I do dispute the application of those rules of law to the present proceeding so far as CI-30 is concerned. I do agree with the

12

holding of the majority so far as CI-27 is concerned because of the absence of real parties in interest in the issue regarding CI-27.

Our question is whether we should allow the filing of plaintiff Marbut's complaint and the answers by the Secretary of State and the Petitioners in Intervention. The majority concludes there is an absence of a justiciable controversy and adverse parties. In Forty-Second Legislative Assembly v. Lennon (1971), 156 Mont. 416, 481 P.2d 330, an original proceeding was brought before this Court for declaratory judgment. The proceeding sought a determination of whether state and local officers could serve as delegates and whether the legislature could provide for non-partisan nomination and election of delegates to the Constitutional Convention. The parties plaintiff in that case were the Legislature itself and the Secretary of State. The sole defendant was the Clerk and Recorder of Cascade County. This Court pointed out in its decision granting a declaratory judgment:

> Here we have a presently existing bona fide, justiciable, legal controversy concerning the authority of the legislative assembly . . . in enacting mandatory enabling legislation for a constitutional convention. Resolution of the issues presented here is necessary to eliminate or reduce a multiplicity of future litigation; to prevent interminable delay . . . and to eliminate needless expenditure of public funds . . . One of the basic purposes of the Montana Declaratory Judgments Act is to provide a procedure for advance determination of such issues, thereby eliminating these otherwise detrimental results.

Lennon, 481 P.2d at 332-33. That is the real basis on which this Court reached its declaratory judgment. No reference was made to the absence of any real parties in interest to establish a controversy. Clearly the Clerk and Recorder of Cascade County whose duties in the course of an election are

13

largely ministerial could hardly be expected to afford the type of defense and the presentation of justiciable issues required under the various cases cited in the majority opinion. This Court concluded that because of the significant issues in the formation of the Constitutional Convention, it should take jurisdiction for declaratory judgment purposes even though there was no justiciable controversy with the named defendant and even in the absence of "real" parties in interest. This broad statement of the powers of this Court was established prior to the enactment of the 1972 Constitution.

Grossman v. State, Dept. of Natural Resources (Mont. 1984), 682 P.2d 1319, 41 St.Rep. 804, was an original proceeding brought by a single taxpayer seeking a declaration that statutes allowing the issuance of coal severance bonds were unconstitutional. The unanimous opinion of the Court contains an extensive discussion of the rights of the citizen, resident and registered elector to bring this original declaratory judgment proceeding before the Supreme Court. The Court concluded:

> We therefore hold that this Court does have original jurisdiction to accept declaratory judgment proceedings where the issues have impact of major importance on a state-wide basis, or upon a major segment of the state, and where the purpose of the declaratory judgment proceedings will serve the office of a writ provided by law . . .

Grossman, 682 P.2d at 1321. The Court discussed at some length the questions raised as to whether or not a single citizen had the right to bring such a proceeding and concluded that the Court had authority over both the subject matter and the parties. In a key statement which I find directly applicable to the present proceeding, the Court stated:

14

> We should without hesitancy recognize this case for what it appears to be: a test case designed to obtain a final judgment on the validity of coal severance tax revenue bonds so that if valid, the bonds will be marketable. We will no longer be qualmish about jurisdiction in a bond issuance case. When the issues are fairly stated, fully explored and vigorously contended, as they appear here, we have a justiciable controversy suitable for final resolution by this Court. Legal niceties must bend on occasion to the reality of the market. The living law moves with the times. (Emphasis added.)

Grossman, 682 P.2d at 1326.

I would agree that our rules of procedure do allow the dismissal of the petition as to CI-30 on the grounds of the absence of a justiciable controversy and the absence of real parties in interest. However, in reaching that conclusion, I believe we are disregarding the broad principles set forth in both Lennon and Grossman.

The people of Montana signed sufficient petitions to qualify CI-30 for a state-wide election under art. XIV, § 9 of the Constitution. Next the people approved CI-30 in the 1986 general election. This Court concluded that the notices were insufficient and voided the 1986 vote. A critical issue remains: Is CI-30 still "alive" so that the people of Montana retain the right to vote on CI-30 at the "next regular state-wide election?"

A companion issue of major importance is whether the "next regular state-wide election" is the primary election of June 7, 1988? If CI-30 is to be considered at that primary election, then the various notices must commence in April 1988. Time is critically significant. If CI-30 must be presented for a vote at the 1988 primary election, but there is a failure for any reason to properly present the same for

15

vote, the issue may become moot without an opportunity on the part of the people of Montana to cast their vote.

I conclude that the interest and involvement of many citizens of Montana in the initiative process as it relates to CI-30 justifies the conclusion that we are dealing with an issue of major importance on a state-wide basis. I conclude this meets the test of Grossman where this Court stated that even though Grossman was a "test case" designed to obtain a judgment, this Court would accept jurisdiction. I would apply the Grossman rationale to this case and conclude that here the issues are fairly stated, can be fully explored and vigorously contended, and we have a justiciable controversy which requires that "legal niceties must bend on occasion to the reality of the market."

Rather than denying the petition of the plaintiff, as was done in the majority opinion, I would grant the petition and make the following provisions: I would direct the Clerk of this Court to immediately file the complaint of plaintiff Marbut and also to immediately file the answers on the part of the defendant Secretary of State and the Plaintiffs in Intervention. I would further set an abbreviated schedule of briefing and argument in order that an appropriate decision could be made with regard to the placement of CI-30 on the 1988 primary election ballot.

_____
Justice


Mr. Justice L. C. Gulbrandson concurs in the foregoing dissent.

_____
Justice

16